**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

ERIK PRINCE,

*Plaintiff*,

v.

THE INTERCEPT, a New York company, FIRST
LOOK MEDIA WORKS, INC., a Delaware
corporation, MATTHEW COLE, an individual, and
ALEX EMMONS, an individual,

*Defendants*.

No. 20-cv-84-ABJ-KHR

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 3

LEGAL STANDARD ............................................................................................... 6

     I.        DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN
               WYOMING. ....................................................................................... 6

     II.       THE ARTICLE IS EXPRESSLY DEFAMATORY. ........................... 12

           A.       The Challenged Statements Are Defamatory *Per Se*. .............. 12

           B.       The Complaint Challenges Express False Statements of Fact, Not
                  Implications. ......................................................................... 15

           C.       The Complaint Challenges Statements of Fact, Not Opinion. ... 16

     III.     PRINCE HAS SUFFICIENTLY PLEAD THE REQUISITE DEGREE OF
               FAULT. ............................................................................................ 17

           A.       Mr. Prince Is Not a Limited-Purpose Public Figure For the
                  Controversy Giving Rise to the Defamation. ............................ 18

           B.       Mr. Prince Has in Any Event Sufficiently Pled Actual Malice. .............. 21

CONCLUSION ....................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Alharbi v. Beck,*
     62 F. Supp. 3d 202 (D. Mass. 2014) ........................................................................... 21

*Anderson v. Rocky Mountain News,*
     1988 U.S. App. LEXIS 19304 (10th Cir. July 7, 1988)................................................. 24

*Anselmi v. Denver Post, Inc.,*
     552 F.2d 316 (10th Cir. 1977) ...................................................................................... 9

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009)....................................................................................................... 6

*Bolduc v. Bailey,*
     586 F. Supp. 896 (D. Colo. 1984).............................................................................. 14

*Budde v. Ling-Temco-Vought, Inc.,*
     511 F.2d 1033 (10th Cir. 1975) .................................................................................. 10

*Burger King Corp. v. Rudzewicz,*
     471 U.S. 462 (1985).................................................................................................. 7, 9

*Cabello-Rondon v. Dow Jones & Co., Inc.,*
     720 F. App'x 87 (2d Cir. 2018) .................................................................................. 23

*Calder v. Jones,*
     465 U.S. 783 (1984)............................................................................................ 8, 9, 10

*Dental Dynamics, LLC v. Jolly Dental Group,*
     946 F.3d 1223 (10th Cir. 2020) ................................................................................. 11

*Dougherty v. Harvey,*
     317 F. Supp. 3d 1287 (N.D. Ga. 2018) ...................................................................... 14

*Dowd v. Calabrese,*
     577 F. Supp. 238 (D.D.C. 1983)................................................................................ 23

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
     514 F.3d 1063 (10th Cir. 2008) ........................................................................... passim

*Gertz v. Robert Welch, Inc.,*
     418 U.S. 323 (1974)........................................................................................ 18, 19, 21

*Grenier v. Taylor,*
     183 Cal. Rptr. 3d 867 (Ct. App. 2015)....................................................................... 21

*Grynberg v. Ivanhoe Energy, Inc.,*
     490 F. App'x 86 (10th Cir. 2012) ......................................................................... 10, 11

*Harte-Hanks Comms., Inc. v. Connaughton,*
     491 U.S. 657 (1989)............................................................................................ 22, 23, 25

*Hill v. Stubson*,
 420 P.3d 732 (Wyo. 2018) ............................................................... 12, 15, 25

*Hoblyn v. Johnson*,
 55 P.3d 1219 (Wyo. 2002) ............................................................... 14

*Hogan v. Winder*,
 762 F.3d 1096 (10th Cir. 2014) ...................................................... 15

*Hutchinson v. Proxmire*,
 443 U.S. 111 (1979) ........................................................................ 19

*Kuhn v. Tribune-Republican Pub. Co.*,
 637 P.2d 315 (Colo. 1981) .............................................................. 23

*Lohrenz v. Donnelly*,
 350 F.3d 1272 (D.C. Cir. 2003) ...................................................... 25

*Martin v. Comm. for Honesty & Justice at Star Valley Ranch*,
 101 P.3d 123 (Wyo. 2004) .............................................................. 19

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990) ............................................................................ 16

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ........................................................................ 22

*Newsome v. Gallacher*,
 722 F.3d 1257 (10th Cir. 2013) ..................................................... 8, 11

*Nguyen-Lam v. Cao*,
 90 Cal. Rptr. 3d 205 (Cal. App. 4th Dist. 2009) ............................ 22

*Piccone v. Bartels*,
 785 F.3d 766 (1st Cir. 2015) ........................................................... 17

*Samuelson v. Tribune Pub. Co.*,
 296 P. 220 (Wyo. 1931) .................................................................. 12, 14

*Schwartz v. Am. Coll. of Emergency Physicians*,
 215 F.3d 1140 (10th Cir. 2000) ...................................................... 16

*Sharon v. Time, Inc.*,
 599 F. Supp. 538 (S.D.N.Y. 1984) ................................................. 25

*Shrader v. Biddinger*,
 633 F.3d 1235 (10th Cir. 2011) ...................................................... 11

*Silver v. Brown*,
 382 F. App'x 723 (10th Cir. 2010) ................................................. 10

*St. Amant v. Thompson*,
 390 U.S. 727 (1968) ........................................................................ 22

iv

*Straub v. BNSF Ry. Co.*,
    909 F.3d 1280 (10th Cir. 2018) ......................................................................... 6

*Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*,
    802 F. App'x 376 (10th Cir. 2020)..................................................................... 7

*Thomas v. Sumner*,
    341 P.3d 390 (Wyo. 2015).......................................................................... 16, 18

*Tschirgi v. Lander Wyo. State Journal*,
    706 P.2d 1116 (Wyo. 1985)................................................................. 12, 13, 14

*U.S. v. A & R Prods.*,
    2014 WL 12787914 (D. N.M. Sept. 3, 2014) ................................................. 23

*U.S. v. Mendoza*,
    333 F.Supp.2d 1155 (D. Utah 2004) ............................................................... 7

*Von Kahl v. Bureau of Nat'l Affairs, Inc.*,
    934 F. Supp. 2d 204 (D.D.C. 2013) ............................................................... 25

*Waldbaum v. Fairchild Publ'ns, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) ..................................................................... 20

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................ 11

*World Wide Ass'n of Specialty Programs and Schs v. Houlahan*,
    138 F. App'x 50 (10th Cir. 2005) ................................................................... 10

*Wyo. Corp. Servs. v. CNBC, LLC*,
    32 F. Supp. 3d 1177 (D. Wyo. 2014) ............................................................. 15

*XMission, L.C. v. Fluent LLC*,
    955 F.3d 833 (10th Cir. 2020) .................................................................. 6, 10

*Yeager v. NPR*,
    2018 U.S. Dist. LEXIS 192047 (D. Kan. Nov. 9, 2018) ................................ 17

*Zimmerman v. Al Jazeera Am.*,
    *LLC*, 246 F. Supp. 3d 257 (D.D.C. 2017)................................................. 24, 25

## **Statutes**

28 U.S.C. § 1631 ...................................................................................................... 7

## **Rules**

Fed. R. Civ. P. 15(a) .............................................................................................. 25

Plaintiff Erik Prince respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss (ECF No. 18, the "Motion") filed by Defendants The Intercept, First Look Media Works, Inc. ("First Look"), Matthew Cole, and Alex Emmons (collectively, "Defendants").

## INTRODUCTION

On April 13, 2020, Defendants published an article about Plaintiff titled, "Erik Prince Offered Lethal Services to Sanctioned Russian Mercenary Firm Wagner" (the "Article").  The Article reported as fact that Mr. Prince "sought in recent months to provide military services to a sanctioned Russian mercenary firm . . . that operates in countries or conflicts where the Russian government seeks plausible deniability for its activities," and "met earlier this year with a top official" of the Russian firm, known as Wagner.  The Article stated that U.S. sanctions make it illegal to do business with Wagner, let alone provide it with military services, and described Mr. Prince's purported actions as an "egregious" legal "violation."  On its face, the Article accused Mr. Prince, a decorated U.S. Navy SEAL veteran, of violating U.S. law and seeking to act as "a subcontractor to the Russian military."  This is completely false.  Mr. Prince has *never* sought to provide military services to Wagner, directly or indirectly.

For purposes of this Motion, Defendants do not dispute that the Article was false. Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 7 n.7, ECF No. 19.  Rather, Defendants argue that the Article is not defamatory and is not "capable" of being read to accuse Mr. Prince of illegal or reprehensible conduct.  This ignores the Article's plain text. The Article *expressly accuses* Mr. Prince of offering prohibited "services to a sanctioned Russian mercenary firm."  The argument is also inconsistent with the Article's own characterization of this reporting as exposing Mr. Prince to "legal liability" as a result of his "violation" of sanctions law.

Defendants' motion fights strawman issues of their own creation rather than engage with the actual allegations of the Complaint.  Defendants devote pages to a flawed defamation by

implication argument but ignore the statements from the Article quoted in the Complaint and alleged to be expressly false.  Defendants likewise argue that the Article contains protected opinions based on disclosed facts, but again, their argument ignores the statements alleged in the Complaint to be false and defamatory.  Moreover, the "disclosed facts" Defendants rely upon *are* the false statements of fact giving rise to Plaintiff's claims, and therefore provide no basis for a valid defense under established law.  When Defendants wrote that Mr. Prince offered lethal military services to sanctioned Russian mercenaries, they were not offering an "opinion" and there was nothing "implicit" about the accusation.

Just as Defendants do not dispute falsity for purposes of this Motion, Defendants do not dispute that the Complaint alleges at least negligent conduct—*i.e.*, Defendants should have known that their statements were false.  They argue, however, that Mr. Prince is a limited-purpose public figure and, as such, he was required to plead that Defendants acted with actual malice.  Mr. Prince is not, however, a limited-purpose public figure because he has not voluntarily participated in the particular public controversy giving rise to the defamation, as the law requires.  Indeed, until the Article was published, there was no controversy as to whether Mr. Prince had sought to sell military services to Russia.

In any event, the Complaint contains numerous allegations that support a plausible inference that Defendants acted with actual malice:  Defendants published an Article about which they must have harbored substantial doubts due to its inherent implausibility, and they relied entirely on anonymous, undescribed sources in violation of The Intercept's own policies. Moreover, Defendants deliberately chose not to engage with Mr. Prince to verify their story because that conversation would have confirmed the falsity of the Article.

Defendants also argue that this case should be dismissed for lack of personal jurisdiction

because they claim the Article was not purposefully directed at Wyoming. Contrary to Defendants' assertions, however, there is nothing "random" or "fortuitous" about the forum of this lawsuit; this District is precisely where Defendants should have expected to be sued. The article was published in Wyoming, about a Wyoming resident's Wyoming-based business activities, and Defendants knew that the Article would cause harm principally in Wyoming. There is no other state where Defendants contend Mr. Prince should have filed suit. The allegations in the Complaint are more than sufficient to establish personal jurisdiction.

The Court should deny Defendants' motion to dismiss in its entirety.

**FACTUAL BACKGROUND**

Plaintiff. Mr. Prince is a citizen and resident of Park County, Wyoming, where he has resided since 1993, owns a home, conducts the bulk of his business, and is registered to vote. Compl. ¶ 11; Declaration of Erik Prince ("Prince Decl.") ¶¶ 2–4. After retiring from the U.S. military as a decorated Navy SEAL officer, Mr. Prince founded and ran Blackwater, a U.S. government contractor supporting the U.S. Armed Services. Compl. ¶¶ 11, 21. Mr. Prince is also the founder and Chairman of private equity firm Frontier Resource Group and an executive Director and Vice Chairman of Frontier Services Group, a leading provider of security, logistics, insurance, and infrastructure services for clients operating in frontier markets. Id. ¶¶ 11, 22.

Defendants. The Intercept is a New York company based in New York that operates an online news publication. Id. ¶ 12. First Look Media Works, Inc. is a Delaware corporation based in New York. Id. ¶ 13. First Look owns The Intercept. Id. Cole and Emmons co-authored the Article and live in New York and the District of Columbia, respectively. Id. ¶¶ 14, 15.

Communications Prior to the Article: On Friday, April 10, 2020, Mr. Prince's counsel received an e-mail from Cole, stating that The Intercept was publishing a story early the next week

alleging that Mr. Prince met with a senior official of Wagner and caused a third party to submit a proposal to Wagner on his behalf.  *Id.* ¶ 41.  Mr. Prince's counsel told Cole that the allegation was false because Mr. Prince had never met with Wagner.  *Id.* ¶ 42. Cole did not respond.  *Id.* ¶ 43.  He did not ask to speak with Mr. Prince, ask any further questions, or provide details that would allow Mr. Prince to respond to the story.[1]  The Intercept published the Article on April 13, 2020.  *Id.*

The Article:  The Article, which is still available on The Intercept's website, bears the title: "ERIK PRINCE OFFERED LETHAL SERVICES TO SANCTIONED RUSSIAN MERCENARY FIRM."  Declaration of Matthew Cole ("Cole Decl.") Ex. A ("Article") at 1, ECF No. 18-4.  The Article contains numerous factual allegations about Prince:

1. Mr. Prince "has sought in recent months to provide military services to a sanctioned Russian mercenary firm in at least two African conflicts."

2.  Mr. Prince "met earlier this year with a top official of Russia's Wagner Group and offered his mercenary forces to support the firm's operations in Libya and Mozambique."

3. "When Prince met with Wagner leadership, he was already under federal investigation for violating arms trafficking regulations."

4. "Prince sought to provide a force in Mozambique, where the government has been fighting a small insurgency over the past two years."

5. "After Wagner lost more than a dozen fighters in Mozambique, Prince sent a proposal to the Russian firm offering to supply a ground force as well as aviation-based surveillance."

Compl. ¶ 39.  Each of these allegations is false:  Mr. Prince did not meet with any representative of Wagner earlier this year, never offered his services to support Wagner's operations in Libya or Mozambique, and never sent Wagner a proposal to offer his services in those countries.  *Id.* ¶ 44.

---

[1]    Defendants characterize the request as seeking to discover the identity of their purported sources.  Defs.' Mem. at 6.  But counsel sought basic information—such as when and where the meeting between Mr. Prince and the Wagner official allegedly took place—that would have allowed Plaintiff to potentially demonstrate the falsity of the accusation.  Compl. ¶ 42; *see also id.* ¶¶ 69–70 (post-publication communication from counsel asking again for this information).

The Article also stated that Prince's alleged actions aided an adversary of the United States and violated U.S. law.  For example, after stating that Mr. Prince met with a Wagner representative and sought to provide Wagner with military services, the Article said that the U.S. sanctioned Wagner in 2017 and that such sanctions prohibit individuals from providing services to or in support of Wagner.  Article at 3.  The Article also stated that Mr. Prince's alleged actions would "in effect, make the influential Trump administration adviser a subcontractor to the Russian military." *Id* at 2.  The Article quotes a purported subject-matter expert who said that "the act of soliciting from a sanctioned party would indeed be an apparent violation" of U.S. law and that "pitching business to Wagner would seem to be a fairly egregious thing to do." *Id.* at 4.

Post-Article:  The next day, Mr. Prince's counsel sent Defendants a letter reiterating that the Article was false and defamatory.  Compl. ¶ 65.  Mr. Prince's counsel asked Defendants to retract the Article, but they declined to do so.  *Id.* ¶¶ 67–68.  Instead, Defendants warned that the Article was just "one in a series of planned articles concerning Mr. Prince's activities." *Id.* ¶ 68. Mr. Prince's counsel sent Defendants another letter objecting to the Article and noting that Defendants had provided "no information about when or where this supposed meeting between Mr. Prince and a representative of Wagner took place, who the Wagner representative was, or other details that would enable Mr. Prince to respond."  Mr. Prince's counsel again asked for this information so that Mr. Prince could respond to the allegations.  *Id.* ¶ 69.  Mr. Prince's counsel explained that Defendants had made it impossible to verify their story with Mr. Prince, and asked Defendants whether there were any questions they believed Mr. Prince could answer about the Article without knowing the requested information.  Defendants identified none.  *Id.* ¶ 70.

Defendants' Article was, as intended, republished by countless other media outlets, generated significant discussion, and resulted in substantial traffic to The Intercept's website.

*Id.* ¶¶ 54–64.  The Article's false allegations portraying Mr. Prince as a criminal and traitor have caused substantial harm to his reputation, good will, and business.  *Id.* ¶¶ 71–74.

## <u>LEGAL STANDARD</u>

A "plaintiff may defeat a motion to dismiss [for lack of personal jurisdiction] by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) that if true would support jurisdiction over the defendant."  *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (internal quotation marks omitted).  At the motion to dismiss stage, any factual disputes must be resolved in the plaintiff's favor, and the plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

A motion to dismiss under Rule 12(b)(6) must be denied where the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In evaluating a motion to dismiss, the court must accept as true all well-pleaded facts and view those facts in the light most favorable to the nonmoving party, drawing all inferences in its favor.  *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

## I.    DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN WYOMING.

Defendants wrote and published a false and defamatory Article about a Wyoming resident's Wyoming-based business activities knowing that it would cause harm principally in Wyoming.  They have no basis for contesting personal jurisdiction in this state.

The crux of the personal jurisdiction analysis turns on whether Defendants are "bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."

*Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

There is nothing "random, fortuitous, or attenuated" about calling Defendants to account for their

wrongful conduct in Wyoming.  Defendants do not contend their actions were directed towards

any other state where they should have been sued instead.[2]

Mr. Prince has long resided in Wyoming and conducts his business from here—the same

business through which the Article falsely claims he "offered lethal services to sanctioned Russian

mercenary firm Wagner."  Compl. ¶¶ 11, 22, 33; Prince Decl. ¶¶ 2, 4.  Defendants knew this when

they wrote and published the Article.  Compl. ¶ 50; Prince Decl. ¶ 6.  Indeed, Defendants

previously published photos of Mr. Prince's Wyoming ranch.  Compl. ¶ 51; Prince Decl. ¶ 6.[3]  And

while Defendants claim that they have never physically visited Wyoming, they do not dispute that

---

[2]    Defendants have therefore conceded that there is no other State at which their actions were directed, and have forfeited any argument to the contrary.  Defendants should therefore not be permitted to suggest an alternate acceptable forum on reply.  *See generally U.S. v. Mendoza*, 333 F.Supp.2d 1155, 1160 (D. Utah 2004) (concluding that because the defendant did not argue that police were not entitled to enter the first room, "the point is conceded"); *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 802 F. App'x 376, 386 (10th Cir. 2020) (noting that the district court deemed one of plaintiff's arguments conceded because its "written submission entirely fail[ed] to address" the issue, and concluding that same issue was waived on appeal).  If, notwithstanding this forfeiture, the Court nonetheless permits Defendants to suggest an alternative State *and* if the Court believes it lacks personal jurisdiction over Defendants *and* if the Court declines to order jurisdictional discovery, Plaintiff requests that instead of dismissing the case, the Court transfer the case to another court "in which the action . . . could have been brought."  28 U.S.C. § 1631.

[3]    While Defendants posit on the one hand that "plaintiff's residency is immaterial to the personal jurisdiction analysis," they felt "constrained to observe" that in a memoir published six years ago, Mr. Prince described himself as a "native of Michigan," who at the time "split[] his time between homes in Virginia and Abu Dhabi."  Defs.' Mem. at 11 n.8.  Where Mr. Prince allegedly lived in the past is irrelevant; for the time period relevant to the Article and lawsuit, Mr. Prince was and is a Wyoming resident, taxpayer, and voter.  Defendants even wrote about Mr. Prince's Wyoming ranch during this period.  *See* Compl. ¶ 51.  Further, without providing any support whatsoever, Defendants contend that other "public documents" from "2005 through the present year . . . reflect that Prince's primary residence is northern Virginia."  Defs.' Mem. at 11 n.8.  But Defendants concede that the Court must accept as true Plaintiff's well-pled factual allegations in the Complaint that Mr. Prince resides in Wyoming.  *Id.*

they knew that their publication of the Article would harm Mr. Prince's professional opportunities and reputation in Wyoming.  The Intercept is published in Wyoming and solicits money from Wyoming residents.  *See* Compl. ¶¶ 23, 28.  Such allegations are more than sufficient to establish personal jurisdiction.  *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 788 (1984).

Defendants challenge only the "purposeful direction" element of the Supreme Court's "minimum contacts" analysis for specific personal jurisdiction,[4] but the facts of this case represent a paradigmatic example of "purposeful direction."  In *Dudnikov v. Chalk & Vermilion Fine Arts*, then-Judge Gorsuch, writing for the Tenth Circuit, discussed why the Supreme Court found purposeful direction in *Calder v. Jones*:

> Distilling *Calder* to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment industry there).

*Dudnikov*, 514 F.3d at 1072.

Mr. Prince's Complaint pleads these elements based on highly analogous facts.  There is no dispute as to the "intentional act" prong:  Defendants do not deny publishing the Article.  The Article was "expressly aimed" at Wyoming because it "was about a [Wyoming] resident and [his]

---

[4]      Defs.' Mem. at 10–13.  Plaintiff has, in any event, alleged that Mr. Prince's injuries "arise out of" Defendants' forum-related activities.  "The import of the 'arising out of' analysis is whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities."  *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).  Defendants knowingly published the defamatory Article aimed at Mr. Prince and his business in Wyoming, and caused his alleged reputational and business-related injuries.  *See, e.g.*, Compl. ¶¶ 50, 52.  Such allegations are sufficient.  *See Newsome*, 722 F.3d at 1270 (plaintiff's allegations that the defendants knowingly acted out of state to harm a company operating in Oklahoma were sufficient).

activities in [Wyoming]."  *See id.*  Because the Article was available online, it was widely distributed within Wyoming as well.  *See id.*; *see also Calder*, 465 U.S. at 790; *Anselmi v. Denver Post, Inc.*, 552 F.2d 316, 325 (10th Cir. 1977).  And Defendants acted with "knowledge that the brunt of the injury would be felt in the forum state" because Defendants knew that Mr. Prince lives in Wyoming and that he conducts his business activities from there.  *Dudnikov*, 514 F.3d at 1072.

The facts in this case are also more analogous to *Calder* than the facts that the Tenth Circuit found sufficient in *Dudnikov*.  In *Dudnikov*, the defendants denied knowing that the plaintiffs' business was located in Colorado and argued that their conduct therefore could not have been "expressly aimed" there.  514 F.3d at 1076.  The Tenth Circuit disagreed, holding that the plaintiffs alleged facts showing that the defendants knew the business was in Colorado.  *Id.*  The court held that "plaintiffs need only make a *prima facie* showing of personal jurisdiction," and the allegations in the complaint were sufficient.  *Id.* at 1070, 1076.[5]

Defendants argue that this Court lacks personal jurisdiction because (1) Defendants did not travel to Wyoming or mention "Wyoming" in the Article; (2) The Intercept is a "worldwide" publication not targeted at Wyoming residents in particular; and (3) it is "immaterial" that Defendants knew the Article was about a Wyoming resident and his Wyoming-based business activities, and would cause harm in Wyoming.  Defs.' Mem. at 11–12.  All of these arguments fail.

<u>First</u>, the Tenth Circuit has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  *Dudnikov*, 514 F.3d at 1075–76 (quoting *Burger King*, 471 U.S. at 476).  Defendants cite no case holding that by not mentioning Wyoming in the

---

[5]     *Dudnikov* shows that even if Defendants denied knowing that Mr. Prince and his business were in Wyoming (and they do not), the allegations in the Complaint would be sufficient.

Article, they can avoid being sued here.  The law does not permit Defendants to evade a lawsuit because they chose not to disclose in the Article where the alleged meetings and conversations they reported supposedly occurred.[6]  *See* Compl. ¶¶ 41–43.

Second, Defendants likewise misstate the law in arguing that this Court lacks personal jurisdiction because the Article was published to a "worldwide audience" online.  Defs.' Mem. at 11–12.  Contrary to Defendants' assertion that online publication without travel to the forum state is "dispositive of personal jurisdiction," the Tenth Circuit has held otherwise.   *Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010) (court had personal jurisdiction over Florida resident who wrote allegedly defamatory online blog about New Mexico resident and did not travel to the state).  The one case Defendants cite for this point is an unpublished opinion that says nothing about worldwide publication being dispositive, or even relevant, to personal jurisdiction.  *World Wide Ass'n of Specialty Programs and Schs. v. Houlahan*, 138 F. App'x 50 (10th Cir. 2005).

Third, Defendants have the law backwards in arguing that their knowledge that Mr. Prince lives in and conducts the bulk of his business in Wyoming "would be immaterial" to this "analysis as a matter of law."  Defs.' Mem. at 12.  Both the Supreme Court and the Tenth Circuit have expressly held the opposite:  knowledge that the plaintiff lives and conducts his business in the forum state is one of the key considerations in personal jurisdiction analysis.  *See, e.g.*, *Calder*, 465 U.S. at 788–90; *Dudnikov*, 514 F.3d at 1075; *see also XMission, L.C.*, 955 F.3d at 846

---

[6]      Such omissions demonstrate why, if the Court believes there is any merit to Defendants' motion, Plaintiff requests that the Court permit jurisdictional discovery, including discovery into Defendants' contacts with Wyoming.  Plaintiff (1) is entitled to such relief, *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."), and (2) would be prejudiced by the Court dismissing the case on an incomplete record. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012).

(recognizing that what was missing from that case was what was present in other Tenth Circuit cases where "each plaintiff made a sufficient showing that defendants knew of the plaintiff's presence in the forum State and intentionally targeted the plaintiff there"); *Newsome*, 722 F.3d at 1269 (defendants "expressly aimed their actions at Oklahoma" because "they knew" that the company operated in Oklahoma, making Oklahoma "the focal point of any tort").

None of the cases Defendants rely on support their argument that it is "immaterial" that Defendants knowingly defamed a Wyoming resident and his Wyoming-based business activities. For example, in *Dental Dynamics, LLC v. Jolly Dental Group*, the Arkansas-based defendants tried to sell a machine to someone in California through an intermediary—the plaintiff—in Oklahoma. 946 F.3d 1223, 1226–28 (10th Cir. 2020). The court held that the allegedly fraudulent conduct was "only incidental to the forum state" because the purpose of the fraudulent conduct was to effectuate a sale to a third party in California. *Id.* at 1232. California, not Oklahoma, was the focus of the *Dental Dynamics'* defendants' purposive efforts. In contrast, the focus of Defendants' Article was on Mr. Prince and his reputation and livelihood in Wyoming. Unlike *Dental Dynamics*, there is no other state where Defendants contend their conduct was targeted.[7]

At bottom, Defendants lack any basis for contending that it is merely fortuitous or otherwise unfair that they have been sued in Wyoming after writing a false and defamatory article about a Wyoming resident's Wyoming-based business activities for an online newspaper that is published in Wyoming and solicits money from this state's residents.

---

[7]     Defendants' other citations fare no better. *See* Defs.' Mem. at 12 (citing the *general* jurisdiction holding in *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011), and *Walden v. Fiore*, 571 U.S. 277 (2014), which merely held that the plaintiff's physical presence in the forum state cannot be the "only link between the defendant and the forum").

## II.   THE ARTICLE IS EXPRESSLY DEFAMATORY.

Defendants contend that: (a) the Article is not defamatory as a matter of law, (b) the Article does not imply that Mr. Prince engaged in unlawful conduct and (c) any such implication would be a mere opinion.  All three arguments mischaracterize the Article, the Complaint, and the law.

### A.  The Challenged Statements Are Defamatory *Per Se*.

The Article falsely accuses Mr. Prince of seeking to provide "lethal" "military services to a sanctioned Russian mercenary firm," among other defamatory accusations.  It is more than capable of a defamatory meaning under Wyoming law.  Because the statements accuse Mr. Prince of illegal and traitorous conduct, they are defamatory *per se*.

At the motion to dismiss stage, a plaintiff need only allege facts sufficient to demonstrate that the statement in question is *capable* of a defamatory meaning.  *Samuelson v. Tribune Pub. Co.*, 296 P. 220, 228 (Wyo. 1931) (motion to dismiss "will only be sustained where the court can affirmatively say that the publication is incapable of any reasonable construction which will render the words defamatory" (internal quotation marks omitted)).  "A defamatory communication is one which *tends* to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held."  *Tschirgi v. Lander Wyo. State Journal*, 706 P.2d 1116, 1119 (Wyo. 1985) (emphasis added).  A statement that imputes a "criminal offense" or "a matter incompatible with business, trade, profession, or office" is defamatory *per se* and thus is "defamatory on its face."  *Hill v. Stubson*, 420 P.3d 732, 741 (Wyo. 2018).

The Article alleges that Mr. Prince: (1) sought "to provide military services to a sanctioned Russian mercenary firm in at least two African conflicts;" (2) met "with a top official of [Wagner] and offered his mercenary forces to support the firm's operations in Libya and Mozambique;" (3) "sought to provide a force in Mozambique;" and (4) "sent a proposal to the Russian firm offering

to supply a ground force as well as aviation-based surveillance." Compl. ¶ 39.  These statements are defamatory because they (1) "expose Mr. Prince to public hatred, contempt, ridicule and disgrace, (2) discredit Mr. Prince in the conduct of his business, (3) were reasonably understood by third parties to mean that Mr. Prince and his business engage in unlawful activities including violating sanctions . . . and U.S. arms trafficking regulations, and (4) were reasonably understood by third parties to mean that Mr. Prince . . . engaged in traitorous activity." *Id.* ¶ 78.

Defendants argue that the Article cannot reasonably be read to mean that Mr. Prince engaged in illegal or traitorous activity. Defs.' Mem. at 13–16.  In so arguing, Defendants dispute not only a plain reading of the statements they published, but also the meaning attributed to these statements *in the Article itself*.  For example, the Article states that Mr. Prince's alleged meeting with Wagner "would, in effect, make the influential Trump administration advisor a subcontractor to the Russian military." Article at 2.  The Article also states that Mr. Prince violated the law because (1) Mr. Prince attempted to provide military services to Wagner, (2) Wagner is a sanctioned entity, and (3) the sanctions against Wagner prohibit individuals from providing it with "financial, material, or technological support."  *Id.* at 3.  Defendants' argument that the Article does not expressly accuse Mr. Prince of illegal, unethical, or traitorous conduct, or that it does not "tend to . . . diminish the esteem, respect, goodwill or confidence in which [Mr. Prince] is held" is baseless. *See Tschirgi,* 706 P.2d at 1119.

Defendants also maintain that the Article merely raises "legitimate questions" and argue that such "questions" are not defamatory. Defs.' Mem. at 15.  But the Complaint does not allege that Mr. Prince was defamed by the false "questions" Defendants cite; it alleges that he was defamed by false statements of fact in the Article that surround and underlie the "questions"— namely, that Mr. Prince sought to provide military services to sanctioned Russian mercenaries.

Defendants' brief wholly ignores these expressly false and defamatory accusations even though they are quoted in the Complaint.  Compl. ¶ 39.  For example, Defendants argue that one statement is not defamatory because it merely raises "concerns" about a "conflict of interest."  Defs.' Mem. at 15.  But the statement says Mr. Prince is "a free agent going between the U.S. and its main power rivals." Article at 7.  This is not a question; it is a false statement of fact.

Framing the defamatory statements as mere "questions" or "criticism" also improperly elevates form over substance.  *See Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1289–92 (N.D. Ga. 2018) (holding that statement that plaintiff "may or may not be HIV positive, I don't know" was defamatory because "[t]o ignore the obvious feature of [the] statement would be to improperly elevate form over substance" and "[t]he plain import of the words spoken charge [the plaintiff] with having HIV").  Courts rightly see through such wordplay.

In any event, Defendants cannot demonstrate—as they must to show that the Article is not defamatory as a matter of law—that the statements in the Article are not at least "*capable*" of defamatory meaning.  *See Samuelson*, 296 P. at 228.  In fact, by conceding that the false statements of fact published in the Article *at least raise questions* about whether Mr. Prince engaged in illegal or traitorous conduct, Defendants admit that the statements are *capable* of defamatory meaning. Nor can Defendants credibly argue that the alleged defamatory meanings do not at least "tend" to injure Mr. Prince's reputation.  *See Tschirgi*, 706 P.2d at 1119.

Finally, the statements in the Article are defamatory *per se*.  *See, e.g.*, *Bolduc v. Bailey*, 586 F. Supp. 896, 899, 901 (D. Colo. 1984) (statement that plaintiff was "a traitor who had performed services for the Castro government" defamation *per se*); *Hoblyn v. Johnson*, 55 P.3d 1219, 1233 (Wyo. 2002) (statements that impute "criminal offense" or "matter incompatible with business, trade, profession, or office" defamatory *per se*).  The statements in the Article are

defamatory *per se* and therefore defamatory on their face.  *Hill*, 420 P.3d at 741 (a statement that is defamatory *per se* "is defamatory on its face").

### B.  The Complaint Challenges Express False Statements of Fact, Not Implications.

Mr. Prince bases this lawsuit on express false statements of fact, not any inferences or implications.  *See* Defs.' Mem. at 16.  Such nuance and subtlety are unnecessary when the offending Article screams from its all-caps headline, "ERIK PRINCE OFFERED LETHAL SERVICES TO SANCTIONED RUSSIAN MERCENARY FIRM."  Article at 1.  This false statement of fact is damning enough to Mr. Prince; there is no need to infer anything further.

A claim for defamation by implication arises when a statement is literally true, but a reasonable reader would nonetheless infer from the true statement a false and defamatory implication.  *See, e.g.*, *Hogan v. Winder*, 762 F.3d 1096, 1105 (10th Cir. 2014) ("[E]ven if a statement is not directly defamatory because it is true, it can be defamatory by implication. In a defamation by implication action, it is the implication arising from the statement and the context in which it was made, not the statement itself, which forms the basis of the claim."); *Wyo. Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1189 (D. Wyo. 2014) (case in which statements were substantially true, and thrust of defamation claim was that true facts implied that plaintiff was engaged in illegal activity).  This is not a case in which the statements at issue are literally true but imply a false and defamatory fact.  Rather, the defamatory quotations from the Article identified in the Complaint are alleged to be *literally false*.  *E.g.*, Compl. ¶ 39; Prince Decl. ¶¶ 7–9.

Defendants' "defamation by implication" argument mischaracterizes the pleaded *defamatory meaning* of false statements identified in the Complaint.  For example, after quoting factual statements from the Article that Mr. Prince alleges are literally false (*e.g.*, Compl. ¶ 39), the Complaint pleads that these statements have a defamatory meaning because they "were reasonably understood by third parties to mean that Mr. Prince, who served his country faithfully

as a U.S. Navy SEAL officer, engaged in traitorous activities against the interests of the U.S." *Id.*

¶ 46. Such allegations do not allege defamation by implication; they are a standard element of

pleading any claim for defamation. *See, e.g.*, *Thomas v. Sumner*, 341 P.3d 390, 402 (Wyo. 2015)

(listing elements of defamation). Defendants' argument is a strawman that ignores the many

statements quoted from the Article and alleged in the Complaint to be expressly false.

### C. The Complaint Challenges Statements of Fact, Not Opinion.

Defendants further confuse matters by arguing that "any implication of treason or illegality

would be an opinion based on disclosed facts." Defs.' Mem. at 16. This is wrong because: (1) the

statements challenged in the Complaint are capable of being proven false, and therefore not

opinions; (2) the excerpts of the Article that Defendants argue are opinions are *not* the defamatory

statements challenged in the Complaint; and (3) the "disclosed facts" on which the supposed

opinions are based *are* the false statements of fact cited in the Complaint.

<u>First</u> and foremost, Defendants' opinion argument fails because the false and defamatory

statements set forth in the Complaint are assertions of objective fact capable of being proven false.

Pure statements of opinion are not actionable because they are not "provable as false." *Milkovich*

*v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990). Here, the statements Mr. Prince challenges are

factual in nature and capable of being proven false. For example, Mr. Prince can and will prove it

was false for Defendants to state that he "sought . . . to provide military services to a sanctioned

Russian mercenary firm in at least two African conflicts," "met earlier this year with a top official

of [Wagner]," and "sent a proposal to [Wagner]." Compl. ¶¶ 5, 39. These are statements of fact.[8]

_____

[8]     Similarly, even "expressions of opinion [that] implicitly contain an assertion of objective
fact . . . are not exempt from a defamation claim." *Schwartz v. Am. Coll. of Emergency Physicians*,
215 F.3d 1140, 1145 (10th Cir. 2000). The purported "opinions" in the Article contain express
factual statements. Defendants cite a statement in the Article that Mr. "Prince's work for certain

Second, Defendants' argument is not directed at the statements alleged by Mr. Prince to be false and defamatory.  Defendants argue that an alleged "implication of treason or illegality" is protected opinion, but the Complaint does not allege that an "implication of treason or illegality" was false and defamatory.  As explained above, the Complaint alleges that the challenged statements in the Article were literally false and were defamatory in meaning because they accused Mr. Prince of illegal or traitorous conduct.  *See* supra at 15–16.

Third, the "disclosed facts" on which any opinions in the Article are based are the false and defamatory statements of fact challenged in the Complaint.  Those "disclosed facts" are actionable.  Defendants cannot inoculate themselves against liability by publishing harmful lies and then offering opinions about those lies.  The cases Defendants cite provide no cover where, as here, statements of opinion are based on false and defamatory facts.  *See, e.g.*, Defs.' Mem. at 17 (citing *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) ("[T]he speaker can immunize his statement from defamation liability by fully disclosing the ***non-defamatory facts*** on which his opinion is based" (emphasis added)); *Yeager v. NPR*, 2018 U.S. Dist. LEXIS 192047, at *11 (D. Kan. Nov. 9, 2018) ("Defamation cannot arise where the speaker communicates the ***nondefamatory*** facts that undergird his opinion." (emphasis added)).

## III.   PRINCE HAS SUFFICIENTLY PLEAD THE REQUISITE DEGREE OF FAULT.

Defendants argue that Mr. Prince is a limited-purpose public figure as to the public controversy giving rise to the defamatory statements in the Article and therefore must plead actual malice.  Defendants do not dispute that Prince has sufficiently alleged that Defendants at a

---

foreign entities is 'a fairly egregious thing to do.'"  Defs.' Mem. at 17.  But read in the context of the Article, as the law requires, it is clear that "work for certain foreign entities" refers to "pitching business to Wagner"—the very fact that Mr. Prince alleges is false and defamatory.  Article at 4.

minimum acted negligently in failing to ascertain whether the Article was false, which is all that is required of private plaintiffs. *Thomas*, 341 P.3d at 402. Therefore, if the Court finds (as it should) that Mr. Prince is not a public figure, the Motion must fail as to the fault element.

Defendants' public figure argument is meritless: Defendants' Article *created* any public controversy over the issues they falsely reported. Even if Mr. Prince were required to plead fault as a limited-purpose public figure, moreover, the Complaint adequately alleges that Defendants knew or were reckless in not knowing that their defamatory statements were false.

### A.  Mr. Prince Is Not a Limited-Purpose Public Figure For the Controversy Giving Rise to the Defamation.

Defendants argue that Mr. Prince is a limited-purpose public figure and therefore must plead actual malice. Defs.' Mem. at 20–22.[9]  But Defendants cannot show that Mr. Prince is a public figure as to the *particular controversy* giving rise to the defamation, as the law requires.

A limited-purpose public figure "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for *a limited range of issues*."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (emphasis added).  In determining whether a plaintiff is a limited-purpose public figure, a court must look at "[the] extent of an individual's participation in *the particular controversy giving rise to the defamation*."  *Id.* at 352 (emphasis added).

Here, the controversy giving rise to the defamation is a controversy of Defendants' own making: Mr. Prince's alleged efforts to sell lethal military services to sanctioned Russian

---

[9]  Defendants cite no support for their argument that Prince "effectively concede[d] in his Complaint that he is a public figure required to plead actual malice" by including allegations in the Complaint that would demonstrate actual malice.  Defs.' Mem. at 20.  Negligence is the minimum degree of fault that a private plaintiff must plead, but there is nothing preventing a private plaintiff from pleading a higher degree of fault where it is present, as it is here.  The Complaint does just that, anticipating that Defendants might advance the public figure argument. *See* Compl. ¶¶ 6, 32, 88, 101.

mercenaries.  *This* allegation is what made the Article news, and what made it defamatory.  Given that the Article created the controversy, Mr. Prince cannot, as a matter of law, be charged with having participated in the controversy so as to become a limited-purpose public figure with regard to it.  *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (holding that controversy generated by the defamatory publication itself cannot meet the "public controversy" requirement); *Martin v. Comm. for Honesty & Justice at Star Valley Ranch*, 101 P.3d 123, 127 (Wyo. 2004) ("The defamatory statement itself cannot, of course, create a public controversy.").

Defendants cannot and do not dispute that they created the controversy over Mr. Prince's alleged solicitation of sanctioned Russian mercenaries.  Instead, they try to define "the particular controversy giving rise to the defamation" in a manner far broader than the law or facts allow.  According to Defendants, Mr. Prince is a public figure as to the "controversy . . . over the use of military contractors overseas by the U.S. government."  Defs.' Mem. at 20.  But the defamation alleged in this action does not arise from such a controversy—the Article is not about "the use of military contractors overseas by the U.S. government."  The Article is about whether Mr. Prince violated U.S. sanctions on *Russia's* "semi-private military force that operates in countries or conflicts where the Russian government seeks plausible deniability for its activities."  Article at 2.

Even if the Article touched on America's use of military contractors, that issue is not what makes the Article *defamatory* and thus it cannot make Mr. Prince a limited-purpose public figure in this case.  *See Gertz*, 418 U.S. at 352 (court must look "to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation"); *Martin*, 101 P.3d at 127 ("[O]nly those statements relating to the controversy that give rise to an individual's public figure status receive the protection of the actual malice standard.").

Defendants try to bridge the gap between these two distinct controversies by arguing that

19

the debate over the U.S. using military contractors has "evolved into how [Mr. Prince's] security expertise is being sold on the open marketplace, including to countries who compete with or are even hostile to U.S. interests." Defs.' Mem. at 21.   Defendants do not explain how Mr. Prince selling his security expertise is a public controversy in the first place, stating only that "[t]he impact of Prince's business endeavors on the U.S. received public attention and prompted discussion." *Id.* at 21.   But "[a] public controversy is not simply a matter of interest to the public" and "[n]ewsworthiness alone will not suffice" to establish a public controversy. *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980).   To hold otherwise would make all defamation in the media a public controversy because "the alleged defamation itself indicates that someone in the press believed the matter deserved media coverage." *Id.*

Mr. Prince is also not a public figure as to this "evolved" public controversy, assuming such a controversy even exists, because he has not injected himself in it or otherwise participated in it.   Defendants say that Mr. Prince has given interviews about "Blackwater, politics, and his current business endeavors," but fail to point to *any* support for the proposition that Mr. Prince injected himself into the "evolved" public controversy surrounding Mr. Prince's security expertise being sold on the open marketplace to foreign powers.   Defs.' Mem. at 21.   In fact, each interview Defendants cite is about one topic:   the U.S. government's use of military contractors.   *See id.* (citing Declaration of Theodore Hartl ("Hartl Decl.") Exs. 12–14, ECF No. 18-6 (interviews about using military contractors in the Afghan war)).   Not one of those interviews is about Mr. Prince allegedly selling his own security expertise to countries hostile to U.S. interests.   The same is true of the two opinion pieces that Mr. Prince has published—they advocate for the U.S.'s use of military contractors in Afghanistan.   *See id.* (citing Hartl Decl. Exs. 15 & 16).   And Mr. Prince's memoir is, yet again, about the role of military contractors in U.S. wars.   *See id.*

Although Defendants cite several news stories discussing Mr. Prince's alleged business ventures abroad, *see id.* (citing Hartl Decl. Exs. 9–11 (articles containing allegations about a Chinese security school and Frontier Services Group's operations in Iraq and China)), mere media attention is not enough—the plaintiff must have *participated* in the debate to be considered a public figure as to that particular issue. *See Alharbi v. Beck*, 62 F. Supp. 3d 202, 208 (D. Mass. 2014) ("[S]ubject of numerous media reports" about Boston marathon bombing was not "figure thrusting himself into a controversy" for purposes of defamation claim). Defendants do not cite any source demonstrating that Prince has voluntarily thrust himself to the forefront of any discussion about his security expertise being sold on the open marketplace. *See Gertz*, 418 U.S. at 345. Their failure to do so is fatal to their argument that Mr. Prince is a limited-purpose public figure *in this case*.[10]

### B.  Mr. Prince Has in Any Event Sufficiently Pled Actual Malice.

Even if he were required to do so, Mr. Prince has sufficiently pled actual malice. The allegations in the Complaint raise a plausible inference that Defendants acted with actual malice by publishing inherently improbable allegations about Mr. Prince, relying entirely on anonymous sources, purposefully avoiding facts demonstrating the falsity of those allegations, and providing Mr. Prince with only an illusory opportunity to engage with Defendants about the Article.

It is undisputed that at the motion to dismiss stage, if Mr. Prince is a limited-purpose public

---

[10]    Compare *Grenier v. Taylor*. 183 Cal. Rptr. 3d 867 (Ct. App. 2015). In *Grenier*, the plaintiff was a priest who had "sought public attention as a pastor" and promoted himself "as a spiritual leader guiding others on Christian morals." *Id.* at 877. But doing so did not make him a public figure for the purposes of his defamation action alleging false accusations of child molestation. *Id.* at 872. As the court explained, the plaintiff's "self-promotion as a spiritual leader . . . did not open him up to public comment on private conduct that could be generally characterized as the antithesis of the morals he espouses, such as child abuse." *Id.* at 878.

figure, he need only allege facts sufficient to give rise to a plausible inference of actual malice.[11] Defs.' Mem. at 22 &. n.13.  Drawing all inferences in Mr. Prince's favor, as the Court must, the Complaint plausibly alleges that Defendants acted with actual malice.  The allegations in the Article that Mr. Prince, a former Navy SEAL officer who earned the trust and confidence of multiple U.S. Presidents, attempted to provide military services to a sanctioned Russian entity in violation of U.S. law and directly contrary to the interests of the United States, are inherently improbable.  Compl. ¶¶ 11, 20–21, 29, 36, 38.  Such claims are so improbable so as to raise a plausible inference that the publisher harbored actual malice in publishing them without fully verifying their accuracy.  *See, e.g.*, *Nguyen-Lam v. Cao*, 90 Cal. Rptr. 3d 205, 214 (Ct. App. 2009) (jury could find actual malice because articles about plaintiff's escape as refugee from Vietnam made statement that she was "Communist" inherently improbable).

The fact that not a single one of Defendants' alleged "sources" would go on the record to back up the inherently improbable allegations about Mr. Prince was another reason for Defendants to doubt the sources and their information.  *See* Compl. ¶¶ 3, 6, 8, 40; *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (whether story is based wholly on an unverified, anonymous source is relevant to actual malice analysis).  Defendants did not even comply with The Intercept's own "Policies and Procedures" requiring them to "supply readers with as many details as possible to contextualize and establish the credibility of anonymously sourced information without

---

[11]    To establish actual malice, a plaintiff must ultimately demonstrate that the defendant acted "with knowledge that [the defamatory statement] was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Reckless disregard means that the defendant "made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

compromising the source."[12]  The Article provides no details such as when or where or with whom the alleged meeting took place or the alleged proposal was submitted, no context, and no information with which the credibility of its anonymous sources could be vetted or challenged.[13] Courts around the country have held that, in a defamation action, media defendants may not rely on confidential sources or information to show lack of malice.  *See, e.g.*, *Dowd v. Calabrese*, 577 F. Supp. 238, 244 (D.D.C. 1983) (ordering that defendants could not rely upon the existence of unidentified sources as evidence of lack of actual malice).  Further, at the motion to dismiss stage, "reliance on anonymous or unreliable sources without further investigation may support an inference of actual malice, where the plaintiff includes additional allegations to buttress such an inference."  *Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018).

Second, the Complaint alleges that Defendants purposefully avoided the truth.  *See Harte-Hanks*, 491 U.S. at 692 ("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category.").  When faced with inherently improbable allegations from anonymous sources, Defendants could have, *at a minimum*, confirmed the allegations with the most obvious source—Erik Prince.  *See, e.g.*, *Kuhn v. Tribune-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981) ("[F]ailure to pursue the most obvious

---

[12]      *See* Declaration of M. Gregory Weisz ("Weisz Decl.") ¶ 2, Ex. A. "A court may judicially notice a fact that is not subject to reasonable dispute if the fact is a) generally known within the court's territorial jurisdiction or b) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned." *U.S. v. A & R Prods.*, 2014 WL 12787914, at *1 (D. N.M. Sept. 3, 2014).  The website is Defendant's own and is available to the public.  Defendants cite to the website for various propositions in their supporting materials.  *See, e.g.*, Hartl Decl.

[13]      Defendants' prior articles attacking Mr. Prince at least provided details to explain who the anonymous source was and how he was in a position to know.  *E.g.*, Weisz Decl. ¶ 3, Ex. B. ("'It's very difficult to manufacture [such aircraft] in Austria and keep everything quiet,' *said a former Airborne employee who worked on the plane*." (emphasis added)).  The Article states only that the sources are "people with knowledge" or "people familiar with Prince's offer." Article at 2.

available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth.").  Defendants decided not to talk with him before publishing the Article even though his counsel denied the allegations ***and asked for additional details that would allow them to have a discussion about the Article.***  Compl. ¶¶ 41–43, 45; Cole Decl. ¶ 11.[14]

      <u>Third</u>, although Defendants point to the empty gesture of asking Mr. Prince's counsel for comment, Defendants knew their inquiry could derive no information that could corroborate the inherently improbable allegations in the Article.  Defendants provided "no information about when or where this supposed meeting between Mr. Prince and a representative of Wagner took place, who the Wagner representative was, or other details that would enable Mr. Prince to respond." Compl. ¶ 69.  Mr. Prince's counsel asked for this information to be able to meaningfully respond, not to determine the identity of Defendants' confidential sources, as Defendants claim.  Defs.' Mem. at 6.  After the Article was published, Mr. Prince's counsel again requested this information and challenged Defendants to identify any questions they believed Mr. Prince could possibly answer without this information. Defendants failed to identify a single such question and provided no information with which it would be possible to verify Defendants' story.  Compl. ¶¶ 69, 70.

      Defendants fail to address most of the above allegations at all in their brief, and as to the allegations they do address, they consider them only in isolation, arguing that each allegation alone would be insufficient to allege actual malice.  But read together, Mr. Prince's allegations support a plausible inference that the Defendants acted with actual malice.  *See Zimmerman v. Al Jazeera*

---

[14]     The fact that Mr. Prince's counsel denied the allegations to Defendants contributes to the inference of actual malice. In *Harte-Hanks*, on which Defendants rely, the Court considered denials and other record evidence in holding that the evidence was sufficient to support a finding of actual malice. 491 U.S. at 691–92.  And unlike in *Anderson v. Rocky Mountain News*, Mr. Prince does not rely on a denial "standing alone" to plead actual malice; the denial is just part of the total evidence of actual malice.  1988 U.S. App. LEXIS 19304, at * 6–7 (10th Cir. July 7, 1988).

*Am., LLC*, 246 F. Supp. 3d 257, 284 (D.D.C. 2017) (at motion to dismiss stage "[p]laintiffs are . . . afforded the benefit of the aggregate of the evidence"); *Harte-Hanks*, 491 U.S. at 682 (sufficient evidence of actual malice where defendant committed to running story before interviewing sole witness that could have verified story but might have denied allegations therein); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 584–85 (S.D.N.Y. 1984) (evidence of actual malice strong enough to go to jury where reporter chose not to ask source ultimate question because reporter knew or suspected that source's answer would undermine reporter's hypothesis).

Motions to dismiss have been denied on similar allegations, or less. *See, e.g.*, *Von Kahl v. Bureau of Nat'l Affairs, Inc*., 934 F. Supp. 2d 204, 218 (D.D.C. 2013) (allegation that plaintiff put defendant on notice that statement was false and defendant nonetheless published it enough to defeat motion to dismiss); *Hill*, 420 P.3d at 741 (allegations that results of independent investigation were not consistent with defendants' statements and that defendant knew communications were false enough to defeat motion to dismiss).[15]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss. If the Court grants any part of Defendants' motion, then Plaintiff respectfully requests leave to amend. *See* Fed. R. Civ. P. 15(a). Further, if the Court is inclined to grant Defendants' motion on personal jurisdiction grounds, Plaintiff respectfully requests that the Court permit jurisdictional discovery and, if necessary, transfer this case rather than dismiss it.

---

[15]   Defendants' inclusion of Mr. Prince's counsel's denial does not rebut the well-pleaded allegations that Defendants' acted with actual malice. *See* Defs.' Mem. at 24. "[T]he inclusion of references to the statements of denial . . . does not unequivocally absolve [defendants] of liability for defamation" and "this line of argument is really nothing more than a rebuttal to the complaint's allegations of fact, which cannot carry the day at the motion-to-dismiss stage." *Zimmerman*, 246 F. Supp. 3d at 285–86 (citing *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286 (D.C. Cir. 2003)).

Dated: September 16, 2020

Respectfully submitted,

*/s/ Matthew L. Schwartz*

M. Gregory Weisz, Wyo. Bar No. 6-2934
PENCE AND MACMILLAN LLC
1720 Carey Ave., Ste. 600
Cheyenne, Wyoming 82001
Tel.: (307) 638-0386
gweisz@penceandmac.com

Matthew L. Schwartz (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300
mlschwartz@bsfllp.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, a true and correct copy of the above and foregoing document was served upon Defendants' counsel described below by the Court's CM/ECF system, to wit:

> Theodore J. Hartl, #7-5623
> Jay Ward Brown, *pro hac vice*
> Mara Gassman, *pro hac* vice
> BALLARD SPAHR LLP
> 1225 17th Street, Suite 2300
> Denver, CO 80202
> hartlt@ballardspahr.com
> brownjay@ballardspahr.com
> gassmannm@ballardspahr.com
> Attorneys for Defendants

*/s/   M. Gregory Weisz*

PENCE AND MACMILLAN LLC