Theodore J. Hartl, #7-5623
Jay Ward Brown (*pro hac vice*)
Mara Gassmann (*pro hac vice*)
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 232-2400
hartlt@ballardspahr.com
brownjay@ballardspahr.com
gassmannm@ballardspahr.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ERIK PRINCE, | }<br>} |
| Plaintiff, | }<br>} |
| vs. | }    Civil No. 20-cv-84-ABJ-KHR |
| THE INTERCEPT, et al. | }<br>} |
| Defendants. | }<br>} |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.     PLAINTIFF MISSTATES THE LAW OF PERSONAL JURISDICTION ..................... 1

II.    PLAINTIFF WAS REQUIRED, BUT FAILED, TO PLEAD ACTUAL MALICE ......... 5

        A.     Plaintiff Cannot Credibly Deny He Is A Limited Purpose Public Figure............... 5

        B.     Plaintiff Concedes He Must Plausibly Plead Actual Malice, But Cannot .............. 8

III.   PLAINTIFF'S REWRITING OF THE ARTICLE CANNOT OVERCOME THE OTHER GROUNDS FOR DISMISSAL ......................................................................... 9

CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anderson v. Rocky Mtn. News*,
   1988 U.S. App. LEXIS 19304 (10th Cir. July 7, 1988) ................................................................ 6

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015) ........................................................................................................ 8

*Bolduc v. Bailey*,
   586 F. Supp. 896 (D. Colo. 1984) ............................................................................................. 10

*Cabello-Rondon v. Dow Jones & Co.*,
   720 F. App'x 87 (2d Cir. 2018) ................................................................................................... 8

*CACI Premier Tech. v. Rhodes*,
   536 F.3d 280 (4th Cir. 2008) ................................................................................................. 6, 7

*Calder v. Jones*,
   465 U.S. 783 (1984) .......................................................................................................... 1, 2, 5

*Clyburn v. News World Commc'ns*,
   903 F.2d 29 (D.C. Cir. 1990) ...................................................................................................... 7

*Dental Dynamics, LLC v. Jolly Dental Group*,
   946 F.3d 1223 (10th Cir. 2020) ................................................................................................... 3

*Dougherty v. Harvey*,
   317 F. Supp. 3d 1287 (N.D. Ga. 2018) ..................................................................................... 10

*Dowd v. v. Calabrese*,
   577 F. Supp. 238 (D.D.C. 1983*)* ................................................................................................ 8

*Dudnikov v. Chalk & Vermilion Fine Arts*,
   514 F.3d 1063 (10th Cir. 2008) ............................................................................................. 3, 4

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ................................................................................................................... 7

*Hatfill v. N.Y. Times Co.*,
   532 F.3d 312 (4th Cir. 2008) ...................................................................................................... 6

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) ................................................................................................ 6, 8

*Lluberes v. Uncommon Prods., LLC*,
   663 F.3d 6 (1st Cir. 2011) .......................................................................................................... 6

*Lohrenz v. Donnelly*,
   350 F.3d 1272 (D.C. Cir. 2003) ............................................................................................6

*Martin v. Comm. for Honesty & Justice*,
   2004 WY 128 ..................................................................................................................6, 8

*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) ...........................................................................................8, 9

*Newsome v. Gallacher*,
   722 F.3d 1257 (10th Cir. 2013) ............................................................................................4

*Perk v. Readers' Digest Ass'n, Inc.*,
   1989 WL 226143 (N.D. Ohio Nov. 14, 1989) ......................................................................8

*Rebozo v. Wash. Post Co.*,
   637 F.2d 375 (5th Cir. 1981) ................................................................................................7

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ............................................................................................4, 5

*Rudolph v. Cunningham*,
   2015 U.S. Dist. LEXIS 44250 (D. Wyo. Mar. 31, 2015) .....................................................2

*Schiavone Constr. Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988) ...............................................................................................7

*Schwartz v. Am. College of Emergency Physicians*,
   215 F.3d 1140 (10th Cir. 2000) ............................................................................................6

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ....................................................................................1, 2, 4

*Silver v. Brown*,
   382 F. App'x 723 (10th Cir. 2010) .......................................................................................4

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) (en banc) .............................................................................9

*Waldbaum v. Fairchild Publ'ns*,
   627 F.2d 1287 (D.C. Cir. 1980) ...........................................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014) .............................................................................................................3

*World Wide Ass'n of Specialty Programs & Schs. v. Houlahan*,
   138 F. App'x 50 (2005) ........................................................................................................3

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ................................................................................................4

**Other Authorities**

U.S. Const. amend. I .................................................................................................................1, 10

# INTRODUCTION

In his Opposition, Plaintiff Erik Prince both rewrites the challenged Article and misstates the law.  Despite his attempted sleights of hand, however, Prince fails to show that Defendants in any way directed the Article specifically at a Wyoming audience *and* made Wyoming the focal point of the alleged defamation.  On this basis alone, the Complaint should be dismissed.

Instead, Prince, a best-selling memoirist, "trust[ed]" informal advisor to U.S. Presidents, and founder of the U.S. State Department's single largest contractor, labors mightily to cast himself as a purely private man who need only plead negligence to state a claim based on the Article.  But Prince became synonymous with the word "mercenary" while leading Blackwater and has continued to attract commentary and controversy since selling that company and becoming director of a Chinese-owned security and infrastructure firm.  Owing to his national prominence and voluntary conduct, under black-letter defamation law, Prince must plead facts plausibly alleging that the challenged statements are knowing falsehoods about him – a burden he cannot meet and which is fatal to his Complaint.  Prince likewise is unable to overcome Defendants' arguments that the Article is protected by the First Amendment for other reasons.

# ARGUMENT

## I. PLAINTIFF MISSTATES THE LAW OF PERSONAL JURISDICTION

Prince's attempt to meet his burden of demonstrating that this Court has personal jurisdiction over each of the Defendants reduces to the singular and conclusory assertion that Defendants knowingly sought to harm him in Wyoming, where he alleges he lives and works, and that the result in *Calder v. Jones* should control here.  But Plaintiff's interpretation of that decision is not the law in this Circuit, and in any event, that case is factually inapposite.

As the Court of Appeals succinctly has explained, "defamatory postings may give rise to personal jurisdiction if they are *directed specifically* at a forum state *audience* or otherwise make

the forum state *the focal point of the message*."  *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (emphasis added).

This standard "is consistent with this circuit's restrictive reading of *Calder*: 'Some courts have held that the 'expressly aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum resident.  We have taken a somewhat more restrictive approach, holding that the forum state itself must be the focal point of the tort.'"  *Id.* (citation omitted); *Rudolph v. Cunningham*, 2015 U.S. Dist. LEXIS 44250, *17 (D. Wy. 2015) ("forum state itself—and not merely a known resident of the forum state—must be the focal point").  Specific personal jurisdiction in California over out-of-state defendants was warranted in *Calder* "not simply because [the actress-plaintiff] lived there but because her professional work was *uniquely tied to California*, where the television and film industries are centered.  *Shrader*, 633 F.3d at 1244 n.7 ("California was 'the focal point both of the story and of the harm suffered,' in that the story was 'drawn from California sources and 'impugned the professionalism of an entertainer whose television career was centered in California'" (quoting *Calder v. Jones*, 465 U.S. 783 (1984))).

Prince is not "uniquely tied to" Wyoming in the way *Calder* envisioned.  Prince does not allege that any particular customers or other business associates of his are Wyoming residents, much less that his customer base is concentrated in the state, nor does he identify any other harm possibly flowing from the Article unique to Wyoming.  Rather, Prince merely repeats the conclusory allegation that Defendants knew he lived and did business in Wyoming and would suffer harm there.  This is incorrect factually,[1] and even assuming it to be true *arguendo*, this *still*

---

[1] While Prince relies on a 2019 Intercept article referencing the Prince family ranch in Wyoming, that article does not establish that Prince himself was domiciled there, or that Defendants believed he was.  Prince's spokesperson is quoted stating that Prince "'allowed Project Veritas to

2

would not establish that Defendants are subject to personal jurisdiction in Wyoming. That is because Prince simply cannot show that Defendants targeted their message "specifically at the forum state audience" (as opposed to a national one) or made Wyoming the "focal point" of the Article.

The precedent is consistent and clear. Br. (Dkt. 19) at 10-12. Prince's attempts to distinguish it sidestep the analysis and language of these cases and rests on immaterial differences. In *Dental Dynamics, LLC v. Jolly Dental Group*, 946 F.3d 1223 (10th Cir. 2020), Opp. (Dkt. 23) at 11, an Oklahoma plaintiff sued for breach of contract and fraud arising from a business dispute. The plaintiff alleged personal jurisdiction in Oklahoma was proper because the defendant had sent its allegedly fraudulent communications there and knew the plaintiff was an Oklahoma company. *Id.* at 1227. The court dismissed, finding that the tortious conduct was "only incidental to the forum state," not the focal point, and the plaintiff's residency there was an "incidental fact" insufficient to establish personal jurisdiction. *Id.* (citing *Walden v. Fiore*, 571 U.S. 277 (2014)); *see World Wide Ass'n of Specialty Programs & Schs. v. Houlahan*, 138 F. App'x 50 (2005) (reporter investigation Utah non-profit not subject to personal jurisdiction).

For his part, Prince ignores the numerous analogous intentional tort cases and relies instead on a copyright dispute, *Dudnikov v. Chalk & Vermilion Fine Arts,* 514 F.3d 1063 (10th

---

use *his family's ranch in Wyoming*.'" Second Cole Decl., Ex. O. This is consistent with Defendants' sworn belief that, while the Prince family owned this property (not uncommon among wealthy families), Prince is a Virginia resident. Cole Decl. (Dkt. 18-3) ¶ 9 ("I have always understood" Prince to have "lived, variously, in McLean, Virginia and Middleburg, Virginia, during the time I have been reporting on him."). The reasonableness of Defendants' belief is further supported by, *inter alia*, newspaper articles, numerous FEC disclosures (some as recent as 2020), 2018 IRS filings, and a 2019 Virginia Secretary of State filing, all of which identify his (and his wife's) address as Middleburg. Second Cole Decl., Exs. O-V. Even if it is true that Prince now genuinely considers himself a Wyoming resident, it cannot be said that Defendants could fairly anticipate being haled into court in Wyoming.

Cir. 2008). In that case, plaintiffs were a husband-and-wife duo selling art from their Colorado home on eBay via a page advertising their Colorado location. The defendants believed plaintiffs' works infringed works in which defendants had a copyright, so they began targeting the business for closure, including by contacting eBay demanding plaintiffs' auction page be shut down. Defendants were successful, so plaintiffs filed a declaratory judgment action in Colorado. The court held there was jurisdiction over defendants in Colorado because they had knowingly targeted a Colorado business for closure and made Colorado the focal point of the attack. *Id.* at 1067-68, 1082. Here, in contrast, Defendants not only did not believe Prince is a resident of Wyoming, but even if they did, Wyoming was not the focal point of the alleged defamation.[2]

Prince's expansive theory of personal jurisdiction has been rejected not only by this Circuit, but by courts around the country in cases involving news articles reporting on a plaintiff's activities in his home state. Two cases involving an alleged defamation online, both cited with approval in *Shrader*, 633 F.3d at 1241, are illustrative. In *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002), the Fourth Circuit concluded that Virginia had no jurisdiction over a Connecticut newspaper sued for defamation by a Virginia prison warden over an article on its website about the "export" of Connecticut prisoners to Virginia prisons and allegedly harsh conditions there. In so holding, the court analyzed the article in suit and found that Virginia was not "the focal point" of either the article or the harm suffered, and thus

---

[2] Prince's other citations are equally inapposite. In *Silver v. Brown*, 382 F. App'x 723, 724-27 (10th Cir. 2010), a business dispute between the parties prompted the defendant to create a blog in the name of the plaintiff's business as a personal vendetta. As the *Shrader* court subsequently explained, the blog challenged in *Silver* "was not a neutral forum already in place for other purposes, but was created by the defendant specifically to provide a launch pad for his attack on the plaintiff's business." 633 F.3d at 1245. In *Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013), in which the defendant-directors of a company conspired to shift unsustainable debts onto the plaintiff-company, personal jurisdiction was appropriate where defendants were connected to the forum state by their ongoing managerial duties and their travel there.

4

personal jurisdiction was not appropriate – despite that defendants knew that plaintiff lived and worked in Virginia, called persons located in Virginia while investigating the story, and described in the article the prison and plaintiff's office within it. *Id.* at 263-64.

Likewise, in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), in which the New York defendant's online article accused the plaintiff, a former FBI director, of conspiring to allow the terrorist bombing of Pan Am Flight 103, the plaintiff could not establish personal jurisdiction in Texas. The Fifth Circuit explained that the article

> contains no reference to Texas, nor does it refer to the Texas activities of [plaintiff], and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder* . . . . [T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*.

*Id.* at 473 (collecting cases). Like the Article at issue here, the publication in *Revell* was "directed at the entire world, or perhaps just concerned U.S. citizens. But certainly it was not directed specifically at Texas . . . ." *Id.* at 475.[3]

Because Prince has not and cannot meet his burden to make a *prima facie* showing that any of the Defendants are subject to jurisdiction in Wyoming, this case should be dismissed.

## II. PLAINTIFF WAS REQUIRED, BUT FAILED, TO PLEAD ACTUAL MALICE
### A. Plaintiff Cannot Credibly Deny He Is A Limited Purpose Public Figure

Even if this Court had jurisdiction over Defendants, Prince cannot overcome the substantive shortcomings of his pleading – foremost, his failure to adequately plead "actual malice." In his attempt to side-step this obligation, Prince maintains that he is a "private figure"

---

[3] Prince advances the peculiar argument that "Defendants do not contend their actions were directed toward towards any other state where they should have been sued instead" and have supposedly "conceded" that they can be sued in Wyoming. Opp. at 7 & n.2 (citing inapposite waiver cases having nothing to do with personal jurisdiction). It is a fundamental precept of personal jurisdiction that Defendants are subject to the jurisdiction of courts where they reside or do substantial business – and Prince himself correctly alleged the states in which he could obtain jurisdiction over each of the Defendants. Compl. ¶¶ 13-15.

5

unwillingly drawn into public controversy for the first time by the Article at issue. Once again, Prince ignores both reality and applicable law.

As set forth in Defendants' opening brief at 18-22, the relevant question of law is whether Prince had voluntarily participated in an existing public controversy addressed by the Article, such that he is a "limited purpose public figure." To determine whether there was an existing public controversy, courts examine whether people were actually discussing a particular question or questions by looking, for example, to "see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment." *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1297 (D.C. Cir. 1980); *accord Anderson v. Rocky Mtn. News*, 1988 U.S. App. LEXIS 19304, at *5 (10th Cir. July 7, 1988); *Martin v. Comm. for Honesty & Justice*, 2004 WY 128, ¶¶ 10-17. "[A] court may find that there are multiple potential controversies," or that "'a narrow controversy may be a phase of another, broader one,'" and will "often define the public controversy in expansive terms." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 586 (D.C. Cir. 2016) (citations omitted) (plaintiff's argument "that narrowing the definition of the controversy is required in order to relate it to the publication containing the defamation is not well taken. The court has defined controversies as being broader than the narrower discussion contained in the defamatory document.")

It cannot reasonably be disputed that, prior to publication of the Article, there was an ongoing public debate in the United States over the role of military contractors generally, and specifically the way in which Prince – one of the most prominent former contractors, with ties to the current President and an expanding role in the African proxy wars – was selling his security expertise, including to countries with interests adversarial to the United States. Second Hartl Decl. Exs., 18-37; Hartl Decl., Exs. 9-12. The revelation that his inroads to Russia might be

growing was newsworthy and important to understanding the geopolitical dynamics. This issue of political and public policy is easily the sort of debate that courts deem a public controversy. *See Schwartz v. Am. College of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000) (public controversy existed concerning hospital management).[4]

Nor can it credibly be disputed that Prince injected himself into this public controversy. Prince's relationships and conduct have long been the topic of widespread reporting and heated debate by detractors and supporters alike. He has utilized his access to the media to raise his profile and shape the public debate. Where a plaintiff embarks on a course of attention that invites comment, he "[can]not escape public figure status simply because he wished not to be one." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1078 (3d Cir. 1988); *accord CACI*, 536 F.3d at 295 (plaintiff "knew when it accepted the interrogation work that it was potentially exposing itself to the inhospitable climate of media criticism" (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974))).[5] Plaintiff insists he has never given interviews about his business ventures overseas, Opp. 20-21, but even if that alone determined his public figure status, his contention is easily refuted. Plaintiff has regularly promoted his foreign business endeavors, including for example, in a 2014 *Wall Street Journal* interview, in which Prince "explained his newest title" as chairman of "an Africa-focused security and logistics company with intimate ties

---

[4] *See also Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 322 (4th Cir. 2008) (same re bioterrorism concerns); *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (same re private security contractors); *Lohrenz v. Donnelly,* 350 F.3d 1272, 1274 (D.C. Cir. 2003) (women in combat); *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011) (labor practices).
[5] The politically connected Prince falls squarely in the class of persons deemed to have assumed the risk of public scrutiny. *Clyburn v. News World Commc'ns*, 903 F.2d 29, 33 (D.C. Cir. 1990) (by "hob-nob[bing]" with politicians, businessman "engaged in conduct that he knew markedly raised the chances that he would become embroiled in a public controversy"); *Rebozo v. Wash. Post Co.*, 637 F.2d 375, 379 (5th Cir. 1981) (Nixon's longtime confidant and advisor was public figure); *Schiavone*, 847 F.2d at 1078-79 (businessman with close ties to Labor Secretary).

to China's largest state-owned conglomerate." Second Hartl Decl., Ex. 38. The *Journal* observed "Beijing['s] titanic ambitions to tap Africa's resources . . . and Mr. Prince wants in.'" *Id.* at 1. Describing his new firm, Prince reportedly said: "'This is not a patriotic endeavor of ours—we're here to build a great business and make some money doing it.'" *Id.* at 2. Opining that "China's expanding commercial empire" does not "come at the expense of American interests," Prince brushed off the "'critics'" who "'can throw stones all they want.'" *Id.* at 3. To Prince, "'this is a very rational decision—made, I guess, emotionless.'" *Id.*; *see* Second Hartl Decl., Exs. 39-44 (Prince interviews, including on his private foreign work). Because Prince "'voluntarily engaged in a course that was bound to invite attention and comment,'" even if "such attention is neither sought nor desired," he cannot now be heard to complain about the natural "consequences of that decision." *Martin*, 2004 WY 128, ¶ 17 (citation omitted).

### B. Plaintiff Concedes He Must Plausibly Plead Actual Malice, But Cannot

Prince concedes that, if he is a limited purpose public figure, he must allege facts that could, if true, plausibly constitute clear and convincing evidence of actual malice. Prince contends that the Complaint raises a plausible inference of actual malice because:

- **Defendants' article contained "inherently improbable allegations" because Plaintiff is a former Navy SEAL officer trusted by "multiple U.S. Presidents." Opp. at 22.** Yet, as history and common sense unfortunately teach, occupying a position of respect and authority does not render misconduct or questionable decision-making "inherently improbable" such that knowledge of falsity could be presumed in such circumstances. Second Hartl Decl., Exs. 51-55 (examples of wrongdoing by officials, including Navy SEAL). Moreover, the current political debate over whether Russia is "directly contrary to the interests of the United States" at all, Opp. at 22, and Prince's own publicly documented Russia meeting render his contention even less sound. Second Hartl Decl., Exs. 45-50; *see Jankovic*, 822 F.3d at 586 (alleged inherently incompatible facts not probative of actual malice).
- **Defendants relied on confidential sources. Opp. at 22-23.** Instead of addressing the authority that reliance on confidential sources is not probative of actual malice, Br. at 24-25, Prince cites *Dowd v. v. Calabrese*, 577 F. Supp. 238, 244 (D.D.C. 1983*)*, holding that a defendant cannot affirmatively use an unnamed source to *disprove* the existence of actual malice, a principle that has no relevance to this motion. Prince also cites *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 89 (2d Cir. 2018), but that court *affirmed dismissal* on

8

the ground that reliance on unnamed sources was not a sufficient allegation of actual malice. *Id.* (citing *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming judgment on pleadings for, *inter alia*, failure to allege actual malice)).

- **Defendants provided Plaintiff with "only an illusory opportunity" to weigh in on the allegations. Opp. at 21, 23-24.**  As the Article recounts, however, Defendants sought Prince's view by contacting his attorney (to whom Cole has conveyed his longstanding interest in an interview with Prince), and included Prince's formal response.  More to the point, even had Defendants not made this effort, declining to contact Prince would not be evidence of actual malice.  *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) (no actual malice where defendant "fail[ed] to contact [plaintiff] himself about the allegations"); *Perk v. Readers' Digest Ass'n, Inc.*, 1989 WL 226143, at *3-4 (N.D. Ohio Nov. 14, 1989) (no actual malice where defendant failed "to contact the subject of the article" or "other sources that would speak favorably of plaintiff"), *aff'd*, 931 F.2d 408 (6th Cir. 1991).

- **Defendants avoided facts that would demonstrate falsity.  Opp. at 23.**  But the only *fact* that Plaintiff pleads for this supposed purposeful avoidance of the truth is that Defendants did not "confirm[] the allegations with the most obvious source—Erik Prince."  Opp. at 23.  As noted, failing to engage the subject of a story is not evidence of actual malice, nor is disbelieving his denials.  *McFarlane*, 91 F.3d at 1510-11 (no actual malice where defendant "could reasonably expect [plaintiff] to deny any involvement regardless of the facts. . . ."[D]enials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'"); *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc) (disbelief in and adversarial approach toward subject of story not actual malice).

At bottom, Prince has failed to allege facts that plausibly could be said to establish by clear and convincing evidence that Defendants told a deliberate falsehood about him, nor can he do so.

### III. PLAINTIFF'S REWRITING OF THE ARTICLE CANNOT OVERCOME THE OTHER GROUNDS FOR DISMISSAL

Defendants established in their opening brief that the Article does not reasonably convey the defamatory meanings alleged by Prince and that, in any event, any such meaning constitutes non-actionable opinion based on disclosed facts. Br. at 13-18.  Prince fails to rebut most of Defendants' arguments in these regards, and Defendants therefore largely stand on their opening brief.  But Prince's effort to rewrite the Article requires rejoinder.

Prince insists that the Complaint alleges claims solely for false statements of fact and that these statements accuse him of being a criminal and traitor.  Opp. at 12-17.  As one example, he cites "the statement [that] says Mr. Prince is 'a free agent going between the U.S. and its main

9

power rivals.'" Opp. at 14.  Viewed in context as it must be, however, that statement immediately follows two indisputably true paragraphs about Prince's work on behalf of China and others, and his decade of work for the UAE.  The Article quotes experts who opine that this work creates "'conflicts of interest [that] are deep and threaten democracy when you have a free agent'" (which Prince, as a private citizen, is) "'going between the U.S. and its main power rivals.'"  Cole Decl., Ex. A at 7.  These facts, too, plainly are true:  Prince is an American citizen and former lead contractor for the U.S. government now selling his services to other nation states.  The next and final sentence of the Article is a continuation of the expert's opinion, "'It would never clear an intelligence community background check.  This is a dangerous thing for any democracy.'"  *Id.*  This is the very definition of an expression of opinion based on disclosed facts, and it therefore is protected by the First Amendment.  Br. at 17.  Prince cites a 1984 case in which the express statement that plaintiff was "a traitor who had performed services for the Castro government" was found to be actionable.  Opp. at 14 (quoting *Bolduc v. Bailey*, 586 F. Supp. 896, 899, 901 (D. Colo. 1984)).  But *nowhere* in the Article at issue here did Defendants call Prince a traitor or treasonous, or even introduce such language.[6]  As it is actually written, the Article does not reasonably convey the meanings Prince attempts to attach to it and constitutes protected opinion.

## CONCLUSION

Defendants respectfully request that this Court dismiss the Complaint in its entirety.

---

[6] In *Dougherty v. Harvey*, 317 F. Supp. 3d 1287 (N.D. Ga. 2018), the defendant suggested that a competitor had HIV before disclaiming that he could neither "confirm nor deny" the statement. The court distinguished this rhetorical device (known as an anodyne) from an implication whose defamatory meaning is not apparent from the face of the statement.  That analysis has no relevance here, where a news article conveys opinions based on true disclosed facts.

10

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ *Theodore J. Hartl*
Theodore J. Hartl, #7-5623
1225 17th Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 232-2400
hartlt@ballardspahr.com

Jay Ward Brown (*pro hac vice*)
Mara Gassmann (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, D.C. 20006
brownjay@ballardspahr.com
gassmannm@ballardspahr.com
*Counsel for Defendants*