# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

ERIK PRINCE,

*Plaintiff*,

v.

THE INTERCEPT, a New York company, FIRST
LOOK MEDIA WORKS, INC., a Delaware
corporation, MATTHEW COLE, an individual, and
ALEX EMMONS, an individual,

*Defendants*.

No. 20-cv-84-ABJ-KHR

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
## IN RESPONSE TO THE COURT'S NOVEMBER 5TH ORDER

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      DEFENDANTS HAVE WAIVED ANY OBJECTIONS TO JURISDICTIONAL DISCOVERY OR TRANSFER. ........................................... 2

II.     MR. PRINCE IS ENTITLED TO JURISDICTIONAL DISCOVERY ................. 3

      A.     The Court Should Permit Jurisdictional Discovery Regarding the Location of the Alleged Meetings Between Mr. Prince and the Wagner Group. ............................................................................................. 5

      B.     The Court Should Permit Jurisdictional Discovery Regarding the Location of Defendants' Sources. ................................................................ 6

      C.     The Court Should Permit Jurisdictional Discovery Regarding Defendants' Knowledge of Mr. Prince's Presence in Wyoming. ............... 8

      D.     The Court Should Permit Jurisdictional Discovery Regarding Defendants' Stated Intention Not to Target Wyoming, and to Challenge Their Credibility Generally ......................................................... 9

III.    IF THE COURT CONCLUDES IT LACKS PERSONAL JURISDICTION AND DOES NOT PERMIT JURISDICTIONAL DISCOVERY, THE COURT SHOULD TRANSFER THIS ACTION. ............................................... 12

      A.     This Action Could Have Been Filed in the Southern District of New York ...................................................................................................... 12

      B.     Transferring the Case Rather Than Dismissing It Is in the Interest of Justice ..................................................................................................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Alharbi v. Theblaze, Inc.*,
    199 F. Supp. 3d 334 (D. Mass. 2016) ................................................................ 7

*Behagen v. Amateur Basketball Ass'n*,
    744 F.2d 731 (10th Cir. 1984) ......................................................................... 9

*Calder v. Jones*,
    465 U.S. 783 (1984)............................................................................... 5, 6, 8

*Conwave, Inc. v. Coast Cutlery Co.*,
    No. 08-CV-39 J, 2008 WL 11320074 (D. Wyo. Sept. 3, 2008) ......................... 9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................... 12

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003) ..................................................................... 5

*District of Columbia v. Murphy*,
    314 U.S. 441 (1941)................................................................................... 10

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ....................................................... 4, 6, 9, 10

*Edmond v. U.S. Postal Serv. Gen. Counsel*,
    949 F.2d 415 (D.C. Cir. 1991) ....................................................................... 3

*El-Fadl v. Cent. Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996) ......................................................................... 6

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962)................................................................................... 14

*Health Grades, Inc. v. Decatur Mem'l Hosp.*,
    190 F. App'x 586 (10th Cir. 2006) .............................................................. 3, 9

*Herbert v. Lando*,
    441 U.S. 153 (1979)..................................................................................... 7

*In re Cline*,
    531 F.3d 1249 (10th Cir. 2008) .................................................................... 14

*Int'l Playthings LLC v. Toy Teck Ltd., LLC*,
    No. CIV. 2:11-6832 KM, 2013 WL 8184357 (D.N.J. July 23, 2013) ................. 4

*Mercator Risk Servs., Inc. v. Girden*,
    No. 08 CIV. 10795(BSJ), 2008 WL 5429886 (S.D.N.Y. Dec. 30, 2008) ......... 13

*Miller v. Hambrick*,
    905 F.2d 259 (9th Cir. 1990) ....................................................................... 14

*Mohon v. Agentra LLC*,
    400 F. Supp. 3d 1189 (D.N.M. 2019) ............................................................. 4

*Newsome v. Gallacher*,
    722 F.3d 1257 (10th Cir. 2013) ...................................................................... 8

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ......................................................................................... 3

*Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*,
    822 N.Y.S.2d 375 (Sup. Ct. 2006) ................................................................ 14

*Serras v. First Tenn. Bank Nat'l Ass'n*,
    875 F.2d 1212 (6th Cir. 1989) ...................................................................... 11

*Silverton Snowmobile Club v. U.S. Forest Serv.*,
    433 F.3d 772 (10th Cir. 2006) ........................................................................ 2

*Sizova v. Nat'l Inst. of Standards & Tech.*,
    282 F.3d 1320 (10th Cir. 2002) ...................................................................... 3

*Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*,
    802 F. App'x 376 (10th Cir. 2020) ................................................................. 2

*Surpitski v. Hughes-Keenan Corp.*,
    362 F.2d 254 (1st Cir. 1966) ........................................................................... 4

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ............................................................................ 3

*XMission, L.C. v. Fluent LLC*,
    955 F.3d 833 (10th Cir. 2020) ........................................................................ 8

## <u>Statutes</u>

28 U.S.C. § 1391 ............................................................................................ 13, 14

28 U.S.C. § 1631 ................................................................................................. 12

Pursuant to this Court's Order on Supplemental Briefing dated November 5, 2020, Plaintiff Erik Prince respectfully submits this Supplemental Memorandum of Law on the issues of jurisdictional discovery and transfer.

## **INTRODUCTION**

The false and defamatory article at the center of this lawsuit was published in Wyoming, about a Wyoming resident's Wyoming-based business activities, and with Defendants' knowledge that it would cause harm principally in Wyoming. These facts, alleged in the Complaint, suffice to make a *prima facie* showing of personal jurisdiction.

If the Court has any doubt as to its jurisdiction over the Defendants, such doubts presumably stem from two sources: (1) Defendants' tactical decision to omit from the Article (and their briefing) any mention of *where* the illegal actions they falsely accused Mr. Prince of undertaking supposedly occurred; and (2) Defendants' say-so in declarations that they did not take certain actions in Wyoming while writing the Article, and that the Article was not targeted at Mr. Prince in Wyoming. Mr. Prince respectfully submits that the Court should reject Defendants' jurisdictional arguments outright at this stage because any inferences – about the location of meetings and sources, about Defendants' knowledge that their reporting would harm Mr. Prince's reputation and business in his home in Wyoming, or otherwise – must be resolved in his favor. The Defendants would then be free to assert their jurisdictional defenses later, on a full record. If, however, the Court is inclined to grant Defendants' motion, it should first permit Mr. Prince to conduct jurisdictional discovery to learn the pertinent facts Defendants have refused to share and to test the assertions in their declarations.

If and only if the Court determines both (1) that Mr. Prince has failed to make a prima facie showing of specific personal jurisdiction over the Defendants in this forum and (2) that he is not entitled to jurisdictional discovery in this district, the Court should transfer this action to the

Southern District of New York.  New York courts would have general jurisdiction over Defendant First Look Media, which is headquartered in New York, and Defendant Matthew Cole, who is a resident of New York.  New York courts would also have specific jurisdiction over Defendant Alex Emmons, who worked with his New York employer and his New York colleague, Cole, to co-author the Article underlying Mr. Prince's claims.  The Southern District of New York is a venue in which this action could have been brought at the time it was filed.  Further, the interests of justice favor transfer because Mr. Prince brought this action in Wyoming in good faith and based on the limited information Defendants made available to him despite his repeated attempts to learn more, whereas there is absolutely no prejudice to the Defendants from a transfer.

## ARGUMENT

### I. DEFENDANTS HAVE WAIVED ANY OBJECTIONS TO JURISDICTIONAL DISCOVERY OR TRANSFER.

As a threshold matter, as the Court observed, Mr. Prince "raised the issue of transferring the case or permitting jurisdictional discovery in the event the Court has concerns about personal jurisdiction" in his opposition to Defendants' motion to dismiss.  [ECF No. 27.]  Mr. Prince's opposition both set out the legal basis for jurisdictional discovery and transfer, and expressly requested such relief.  [ECF No. 23 at 7 n.2, 10 n.6, and 25.]  In their reply, Defendants did not address jurisdictional discovery or transfer at all.  [ECF No. 25.]  Under well-established Tenth Circuit law, therefore, they have waived any objection to that relief.  *See, e.g.*, *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 802 F. App'x 376, 386 (10th Cir. 2020) (noting that the district court deemed one of plaintiff's arguments conceded because its "written submission entirely fail[ed] to address" the issue, and concluding that same issue was waived on appeal); *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) (failure to raise issue in opening brief waives that issue).

## II. MR. PRINCE IS ENTITLED TO JURISDICTIONAL DISCOVERY.

For the reasons given in Mr. Prince's opposition, the well-pleaded allegations of the Complaint suffice to make a *prima facie* showing of personal jurisdiction. Defendants' motion, which relied on materials outside of the pleadings, should therefore be denied without prejudice to renewing the personal jurisdiction defense at summary judgment.

If, however, the Court is sufficiently concerned about personal jurisdiction at this stage, it may order jurisdictional discovery before full merits discovery. The Court should allow Mr. Prince to conduct discovery on the numerous factual issues relating to jurisdiction raised in Defendants' motion to dismiss rather than finding jurisdictional facts based on an undeveloped record.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 589 (10th Cir. 2006) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction."). "While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary." *Health Grades*, 190 F. App'x at 589 (citing *Sizova*, 282 F.3d at 1326).

Numerous courts have held that jurisdictional discovery is warranted where the relevant facts are exclusively in the defendant's control. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (holding that district court erred in denying jurisdictional discovery

as to information "known only to [defendant]" that "would shed light on the extent, if any, [defendant's] business activity . . . were aimed towards the United States"); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966) ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try [jurisdiction] on affidavits without the benefit of full discovery."); *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1243 (D.N.M. 2019) (granting jurisdictional discovery where jurisdiction turned on agency relationship and defendant "possesse[d] the better information and the better access to information on [the] relationship"); *Int'l Playthings LLC v. Toy Teck Ltd., LLC*, No. CIV. 2:11-6832 KM, 2013 WL 8184357, at *6 (D.N.J. July 23, 2013) (granting jurisdictional discovery where "the relevant jurisdictional facts appear to be entirely in Defendants' control").

Although Mr. Prince filed a declaration setting out the facts that he knows about his own substantial ties to Wyoming [ECF Nos. 23-1, 26], other facts relevant to the Court's jurisdictional analysis are exclusively within Defendants' control, weighing in favor of granting jurisdictional discovery. In particular, Mr. Prince would seek to conduct discovery on at least three topics that are pertinent to the jurisdictional inquiry,[1] are either controverted or require a more satisfactory showing at this stage, and are exclusively within Defendants' control. Those topics, discussed further below, relate to: (A) where and when Defendants contend the alleged meetings between

---

[1]     For purposes of analyzing specific jurisdiction and purposeful direction toward a state by a party defending against an intentional tort claim, the Tenth Circuit considers whether there was: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). Thus, in this case, any fact relevant to whether Defendants expressly aimed their conduct (the defamatory Article) at Wyoming or whether Defendants knew that the brunt of the injury would be felt in Wyoming is pertinent to the jurisdictional inquiry, as would be any fact demonstrating that Defendants engaged in their reporting process while they or their sources were in Wyoming.

Mr. Prince and the Wagner Group took place; (B) the locations of Defendants' sources; (C) Defendants' knowledge of Mr. Prince's presence and activities in Wyoming; and (D) Defendants' assertion that they did not "intend" to target Wyoming.

A.  The Court Should Permit Jurisdictional Discovery Regarding the Location of the Alleged Meetings Between Mr. Prince and the Wagner Group.

First, the Court should permit Mr. Prince discovery regarding where the alleged events described in the Article are supposed to have taken place.  Defendants fault Mr. Prince for not showing "that Defendants targeted their message 'specifically at the forum state audience' (as opposed to a national one) or made Wyoming the 'focal point' of the Article."  [ECF No. 25 at 3.] But neither the Article nor Defendants' declarations state when and where the purported meeting(s) between Mr. Prince and the Wagner Group – the central focus of the Article – occurred.  Only Defendants know where they contend the meetings took place, because the meetings never actually happened, as both the Complaint alleges and Mr. Prince's declaration attests.  [ECF Nos. 1 ¶ 5, 23-1 ¶¶ 7–9.]  Mr. Prince's counsel asked Defendants for this information both before and after the Article was published, but Defendants refused to provide it.  [ECF No. 1 ¶¶ 42, 69.]

The location of the imagined meetings is relevant to jurisdiction.  If the meetings occurred in Wyoming, where Mr. Prince lives and works, that fact would establish that Wyoming was, in fact, the "focal point" of the Article.  *See Calder v. Jones*, 465 U.S. 783, 788–89 (1984) ("The allegedly libelous story concerned the California activities of a California resident. . . . In sum, California is the focal point both of the story and of the harm suffered.").  But Defendants omitted that information from the Article, and they have refused to otherwise disclose it to Mr. Prince.  The law does not permit defendants to evade defamation lawsuits on personal jurisdiction grounds by refusing to disclose where the alleged events they reported supposedly occurred.  *See Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) ("A plaintiff faced with a

motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996))).

B. The Court Should Permit Jurisdictional Discovery Regarding the Location of Defendants' Sources.

Second, the Court should permit jurisdictional discovery into the location of Defendants' sources, and specifically, whether Defendants met with, contacted, or attempted to contact any person or entity in Wyoming. Defendants' sources did not go on the record and Defendants have refused to disclose their identities or locations. [ECF No. 1 ¶ 40.] Given Mr. Prince's extensive personal and professional ties to Wyoming, it is certainly plausible that some or all of Defendants' sources – to the extent they exist at all – were located in Wyoming.

Although physical travel to Wyoming is not required to establish personal jurisdiction in this case,[2] whether Defendants traveled to or otherwise reached into Wyoming to speak with sources in Wyoming (or for any other purpose in connection with the Article) is relevant to whether Defendants' conduct arose directly from contacts with Wyoming and whether Defendants purposefully directed their conduct at Wyoming. *See Calder*, 465 U.S. at 788 (considering the fact that "[t]he article was drawn from California sources" in jurisdictional analysis). But instead of explaining who they talked to, Defendants' declarations provide only selective information, including cherry-picked assertions that support their argument while potentially omitting others that do not. Defendants repeatedly say that no First Look employee traveled to Wyoming or had contact with anyone in Wyoming in connection with the Article, while at the same time failing to

---

[2]     *Dudnikov*, 514 F.3d at 1075–76 (explaining that the Tenth Circuit has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there").

provide any information about what they did, in fact, do in writing the Article. [ECF Nos. 18-1 ¶ 4; 18-2 ¶ 7; 18-3 ¶ 7.] If Defendants did not speak to sources in Wyoming, then who did they speak to, and where? Did they speak with a Wyoming-based source who happened not to be in Wyoming at the time of their meeting? And even if Defendants did not ultimately communicate with any sources in Wyoming, did they attempt to do so? Defendants should not be entitled to withhold basic, relevant facts about their reporting, while at the same time arguing that the Court should make a factual finding at this juncture that Defendants did not aim any conduct at Wyoming.

While Mr. Prince is sensitive to the confidential nature of news sources (and would be willing to permit such discovery on an attorneys'-eyes-only basis), to permit Defendants to keep their sources confidential while relying upon them to substantiate a jurisdictional challenge would be inappropriate. Having chosen to rely on the location of their sources and reporting activities as part of their bid to dismiss the complaint on jurisdictional grounds, Defendants must submit to discovery sufficient to challenge their claims. [*See* ECF Nos. 18-1 ¶ 4; 18-2 ¶ 7; 18-3 ¶ 7.] *See, e.g.*, *Alharbi v. Theblaze, Inc.*, 199 F. Supp. 3d 334, 350 (D. Mass. 2016) (granting motion to compel identities of confidential sources because defendants' arguments that statements were true and that defendants did not act with actual malice hinged on what confidential sources told defendants); *see also Herbert v. Lando*, 441 U.S. 153, 153 (1979) (holding that "[w]hen a member of the press is alleged to have circulated damaging falsehoods and is sued for injury to the plaintiff's reputation, there is no privilege under the First Amendment's guarantees of freedom of speech and freedom of the press barring the plaintiff from inquiring into the editorial processes of those responsible for the publication").

C. The Court Should Permit Jurisdictional Discovery Regarding Defendants' Knowledge of Mr. Prince's Presence in Wyoming.

The Court should also permit discovery as to Defendants' knowledge about Mr. Prince's presence in Wyoming. In Defendants' declarations, they challenge the allegation in Mr. Prince's Complaint that Defendants know he lives and conducts the majority of his business in Wyoming. [ECF Nos. 1 ¶ 51; 18-3 ¶ 9 (Cole declaring that he has "always understood [Mr. Prince]" to be a resident of Northern Virginia" but is aware that "Mr. Prince uses a family property in Wyoming"); 25-1 ¶ 2.] Defendants' knowledge and belief about Mr. Prince's residence is relevant to jurisdiction because it goes to whether Defendants acted with knowledge that the brunt of the injury would be felt in Wyoming. *See, e.g.*, *Calder*, 465 U.S. at 788–90; *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020) (recognizing that what was missing from that case was what was present in other Tenth Circuit cases where "each plaintiff made a sufficient showing that defendants knew of the plaintiff's presence in the forum State and intentionally targeted the plaintiff there"); *Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013) (defendants "expressly aimed their actions at Oklahoma" because "they knew" that the company operated in Oklahoma, making Oklahoma "the focal point of any tort").

The Court should not find as a matter of fact at this stage that Defendants did not know that Mr. Prince primarily lives and works in Wyoming. Mr. Prince must be able to challenge Defendants' assertions before the Court accepts them as true. Further, Defendants' declarations about their knowledge are directly contradicted by Mr. Prince's own declaration and the Complaint, which both plead facts from which one may reasonably infer that Defendants did, in fact, know that Mr. Prince lived in Wyoming during the relevant time period. For example, Defendants published an article containing photographs of Mr. Prince's Wyoming home and Mr. Prince has fielded calls from The Intercept's reporters from his Wyoming home. [ECF Nos. 1 ¶ 51;

23-1 ¶ 6.]   It is well-settled that, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . [i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Conwave, Inc. v. Coast Cutlery Co*., No. 08-CV-39 J, 2008 WL 11320074, at *1 (D. Wyo. Sept. 3, 2008) (Johnson, *J.*) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).

In *Dudnikov*, the defendants denied "that they knew plaintiffs' business was located in Colorado, and therefore that their conduct could have been expressly aimed at Colorado." 514 F.3d at 1076.  In the face of conflicting information, the Tenth Circuit resolved the factual dispute in the *plaintiffs'* favor: "[W]hile defendants are of course free to pursue that defense in later stages of this litigation, plaintiffs have alleged that defendants knew the location of their business." *Id.* The Court therefore should not accept Defendants' declarations of their subjective knowledge about Mr. Prince's presence in Wyoming as true at this stage, especially when they are contradicted by the allegations in the Complaint and Mr. Prince's own declaration.  While *Dudnikov* and the other authorities in Mr. Prince's original opposition brief counsel in favor of denying Defendants' motion without prejudice to renewing their jurisdictional challenge later, at a minimum the Court should order jurisdictional discovery rather than resolving disputed issues of fact in the Defendants' favor.  *See Health Grades*, 190 F. App'x at 589 ("[A] refusal to grant discovery constitutes an abuse of discretion if . . . the pertinent jurisdictional facts are controverted.").

D.  The Court Should Permit Jurisdictional Discovery Regarding Defendants' Stated Intention Not to Target Wyoming, and to Challenge Their Credibility Generally.

Defendants Cole and Emmons, the Article's co-authors, avoid disclosing details about the fabricated meetings between Mr. Prince and the Wagner Group, and thus about the focal point of the Article, by stating in their declarations that they never "intended" to target Wyoming or persons in Wyoming.  [ECF Nos. 18-2 ¶ 7, 18-3 ¶ 8, 25-1 ¶ 11.]  In addition, Kate Myers, an Executive

Director of Revenue and Operations at First Look Media, purports to declare on behalf of every single employee of First Look Media – albeit without explaining the basis for that declaration – that First Look Media itself did not subjectively intend to target Wyoming. [ECF No. 18-1 ¶ 6.]

The Court should not afford these untested assertions any weight because, first, whether Defendants "intended" to target Wyoming is not legally relevant – the question is whether the Article was expressly aimed at Wyoming (*i.e.*, whether the Article "was about a [Wyoming] resident and [his] activities in [Wyoming]") and whether Defendants knew "that the brunt of the injury would be felt in [Wyoming]." *See Dudnikov*, 514 F.3d at 1072. Further, such self-serving declarations about Defendants' subjective state of mind – if relevant at all – require further exploration through discovery. *See, e.g.*, *District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941) ("One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."). If the Court finds such "state of mind" evidence relevant to the jurisdictional analysis, the Court should permit Mr. Prince to conduct discovery necessary to challenge defendants' assertions.

Mr. Prince should also be entitled to probe Defendants' credibility both about their subjective intentions and knowledge, but also as to facts uniquely in the possession of the Defendants, such as whether any of their newsgathering took place in Wyoming. There is good reason to question their credibility: The Intercept has a history of irresponsible journalism. In 2016, for example, The Intercept had to correct five stories and retract one story after discovering "a pattern of deception" in one of its journalist's reporting. https://theintercept.com/2016/02/02/a-note-to-readers/ (explaining that staff reporter "fabricated several quotes in his stories and created

fake email accounts that he used to impersonate people").  In 2017, The Intercept, and specifically Defendant Matthew Cole, rushed to publish a story about Russian interference in the 2016 elections without first taking basic security measures, resulting in the arrest and incarceration of its source.  Ben Smith, *The Intercept Promised to Reveal Everything. Then Its Own Scandal Hit*, N.Y. Times (Sept. 13, 2020), *available at* https://www.nytimes.com/2020/09/13/business/media/the-intercept-source-reality-winner.html.  And just last month, The Intercept's co-founder resigned after The Intercept's editors censored an article he wrote that was critical of Joe Biden, displaying both its lack of editorial standards and its political bias.  Glenn Greenwald, *My Resignation From The Intercept*, Substack (Oct. 29, 2020), *available at* https://greenwald.substack.com/p/my-resignation-from-the-intercept.

Rather than accept the Defendants' declarations on their face, Mr. Prince should have the opportunity to challenge them and their credibility through limited jurisdictional discovery, including cross-examination.  *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (explaining that if written submissions filed in connection with motion to dismiss for lack of personal jurisdiction "require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing").

*     *     *

The jurisdictional discovery discussed above can be accomplished through a set of targeted written demands and a small number (likely no more than three) depositions limited to jurisdictional topics.  If it would be helpful to the Court's consideration of this issue, Plaintiff can certainly provide a draft set of written discovery demands for the Court's review.

## III. IF THE COURT CONCLUDES IT LACKS PERSONAL JURISDICTION AND DOES NOT PERMIT JURISDICTIONAL DISCOVERY, THE COURT SHOULD TRANSFER THIS ACTION.

If – and only if – the Court believes it lacks personal jurisdiction over Defendants *and* if the Court declines to permit jurisdictional discovery, the Court should transfer this case to the Southern District of New York. The relevant federal transfer statute, 28 U.S.C. § 1631, provides that if a federal court determines that it lacks jurisdiction over a civil action or appeal, "the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." (Emphasis added.) Transferring this case to another court in which it could have been brought – the Southern District of New York – would be in the interest of justice as opposed to dismissing it altogether.

### A. This Action Could Have Been Filed in the Southern District of New York.

Although Defendants do not identify which state, other than Wyoming, their reporting was actually targeted at, they effectively concede that this action could have been initiated in the Southern District of New York. [ECF Nos. 23 at 7 n.2; 25 at 5 n.3.] New York courts would have personal jurisdiction over each of the Defendants.[3] Defendant First Look Media is headquartered in New York [ECF Nos. 1 ¶ 13; 18-1 ¶ 2], rendering it "at home" in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (internal quotation marks omitted)). Thus, New York courts would have general jurisdiction over First Look Media.

New York courts would also have general jurisdiction over Cole, who, according to both

---

[3] Another jurisdiction could also have specific personal jurisdiction over the Defendants, but Mr. Prince cannot know where Defendants purposefully directed their conduct if not Wyoming without discovery.

his declaration and the Complaint, is a citizen of New York. [ECF Nos. 1 ¶ 14; 18-3 ¶ 5.] And New York courts would have specific jurisdiction over Emmons. Emmons lives in Washington, D.C., but is an employee of a New York-based organization and co-authored the Article with his New York-based colleague, Cole. [ECF No. 1 ¶ 15; 18-2 ¶ 6.] Although Mr. Prince cannot know the extent to which Emmons communicated or met with Cole and other Intercept employees in New York, it is clear that this lawsuit arose directly out of Emmons's contacts with New York, including the editorial and publishing apparatus for The Intercept in New York. *See, e.g.*, *Mercator Risk Servs., Inc. v. Girden*, No. 08 CIV. 10795(BSJ), 2008 WL 5429886, at *3 (S.D.N.Y. Dec. 30, 2008) (finding personal jurisdiction over out-of-state employees of New York company because employees had "interacted with their employer's New York headquarters, accessed data maintained by their employer in New York, availed themselves of the benefit of being employed by a New York company, and generated profits for a New York company").

Venue would also be proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), which provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Cole presumably wrote the Article from his New York home or The Intercept's New York headquarters, and he certainly contacted Mr. Prince's counsel in New York prior to publishing the Article. [ECF Nos. 1 ¶¶ 13, 14, 41; 18-1 ¶ 2; 18-3 ¶¶ 5, 11.] But, again, Mr. Prince does not know where the newsgathering process occurred because Defendants have refused – in the Article, in their declarations, and in response to Mr. Prince's questions – to provide any information about that process, such as where any purported interviews took place, or where the events on which the Article falsely reported purportedly occurred. Even if a substantial part of the events giving rise to Mr. Prince's claims did not occur in the Southern District of New York, however, venue would still be proper in that district under

§ 1391(b)(3), which provides: "if there is no district in which an action may otherwise be brought as provided in this section, [venue is proper in] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." As explained above, Defendants are each subject to personal jurisdiction in New York.

B. Transferring the Case Rather Than Dismissing It Is in the Interest of Justice.

Factors relevant to the interest-of-justice determination include "whether the claims would be time-barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if . . . it was clear at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

Although Mr. Prince's claims would be timely if he were to refile them in the Southern District of New York by April 13, 2021, one year after Defendants posted the defamatory Article, *see Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*, 822 N.Y.S.2d 375, 377 (Sup. Ct. 2006), the other interest-of-justice factors weigh directly in favor of transferring this case if the Court concludes that it lacks personal jurisdiction over Defendants. First, and as detailed in Mr. Prince's opposition to Defendants' motion to dismiss, his claims have merit. Defendants published an Article containing provably false allegations that have caused Mr. Prince's personal and professional reputations harm and that accused him of illegal, sanctionable conduct. Not only are the allegations in the Article false, but Defendants must have harbored substantial doubts about the Article due to its inherent implausibility, and they relied entirely on anonymous, undescribed sources in violation of their own policies. Moreover, Defendants deliberately chose not to engage

with Mr. Prince to verify their story because that conversation would have confirmed the falsity of the Article. Defendants' deliberate disregard of the truth is especially apparent in light of The Intercept's history of stretching the truth and cutting corners when doing so serves its political agenda. *See supra* pages 10–11. Mr. Prince's defamation claims, whether he is a limited purpose public figure or not, have substantial merit and are likely to succeed.

Second, Mr. Prince filed the Complaint in this District – his home and primary place of business – in good faith. Defendants have told Mr. Prince nothing about their newsgathering process that would have indicated where they aimed their conduct if not Wyoming. Defendants would not tell Mr. Prince who they talked to, where they got their information from, or where they believed the alleged meetings between Mr. Prince and the Wagner Group took place. Mr. Prince was completely in the dark as to where the purported conduct underlying this lawsuit took place, and therefore made the reasonable, good faith determination that the Article was targeted at Mr. Prince himself in Wyoming, where he lives, conducts the bulk of his business, and regularly hosts meetings with customers, investors, employees, and other business associates. [ECF Nos. 23-1 ¶ 4; 26 ¶ 3.] And this is despite Mr. Prince's counsel asking Defendants multiple times to disclose the necessary information, and Defendants refusing to respond. [ECF No. 1 ¶¶ 42–43, 69–70.]

There is no justification for dismissing this case as opposed to transferring it to another jurisdiction, and transfer would in no way prejudice Defendants' position. Instead, transfer would lead to a more "just, speedy, and inexpensive determination" of this action for all parties, *see* Fed. R. Civ. P. 1, as opposed to requiring Mr. Prince to refile this lawsuit anew in another jurisdiction.

## CONCLUSION

If the Court is inclined to grant Defendants' motion on personal jurisdiction grounds, Plaintiff respectfully requests that the Court first permit jurisdictional discovery or, if necessary, transfer this case rather than dismiss it.

Dated: November 30, 2020

Respectfully submitted,

/s/ *M. Gregory Weisz*

M. Gregory Weisz, Wyo. Bar No. 6-2934
PENCE AND MACMILLAN LLC
1720 Carey Ave., Ste. 600
Cheyenne, Wyoming 82001
Tel.: (307) 638-0386
gweisz@penceandmac.com

Matthew L. Schwartz (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300
mlschwartz@bsfllp.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 30th day of November, a true and correct copy of the above and foregoing document was served upon Defendants' counsel described below by the Court's CM/ECF system, to wit:

> Theodore J. Hartl, #7-5623
> Jay Ward Brown, *pro hac vice*
> Mara Gassman, *pro hac* vice
> BALLARD SPAHR LLP
> 1225 17th Street, Suite 2300
> Denver, CO 80202
> hartlt@ballardspahr.com
> brownjay@ballardspahr.com
> gassmannm@ballardspahr.com
>
> Attorneys for Defendants

*/s/   M. Gregory Weisz*

PENCE AND MACMILLAN LLC